WACHOVIA BANK AND TRUST COMPANY, AS EXECUTOR UNDER THE WILL OF ADDIE HEREFORD UPTON, v. CAMILLE H. WOLFE AND THE AMERICAN NATIONAL RED CROSS.

(Filed 27 February, 1957.)

**1. Wills § 31—**

A will must be construed as a whole to ascertain the intent of testator, and effect must be given to each clause, phrase and word if this is possible by any reasonable construction, and conflicting provisions must be reconciled if possible.

**2. Same—**

In undertaking to reconcile apparently conflicting provisions of a will, apparently inconsistent subordinate provisions must be given effect in accordance with the general prevailing purpose of testator.

**3. Wills § 34e—**

The rule of *ejusdem generis* does not arbitrarily control in the construction of a will but is to be used as an aid in ascertaining the intent of testator as gathered from the will as a whole.

**4. Same—Under rule of ejusdem generis "personal property" held to refer to personal effects rather than to securities.**

Testatrix, after bequests of specified sums to designated charities, left her sister "my furniture, household effects and personal property" and then left "the balance of my estate" to the National Red Cross. At the time of

executing the will and at the time of her death testatrix had no realty. It further appeared that testatrix had made provision for her sister in certain insurance policies and savings bonds. *Held:* Construing the will as a whole, the bequest to testatrix' sister was only of tangible articles of household and personal use, since otherwise the residuary bequest to the National Red Cross would be meaningless, and this construction is strengthened by the evidence of the circumstances attendant when the will was made.

**5. Wills § 39—**

The ascertainment of the intent of testatrix from the language of the instrument is a question of law.

**6. Same—**

The intent of testator must be ascertained from the language of the instrument, and while evidence of the circumstances attendant the execution of the will is competent when tending to shed light upon testator's intent as expressed in the language used, parol evidence of declarations made by testator is incompetent as an aid in construction.

APPEAL by defendant American National Red Cross from *Crissman, J.,* March Term, 1956, of ROWAN.

Executor's action for construction of the holographic will of Addie Hereford Upton and for advice as to the disposition of cash, bonds and securities remaining in its hands.

The dispositive provisions of the will are these:

"I hereby will and bequeath ten thousand dollars ($10,000.) to the Charity Hospital in New Orleans, Louisiana. To St. Andrews Episcopal Church in New Orleans, Louisiana, I will the sum of five hundred ($500.00) dollars. To St. Luks (*sic*) Episcopal Church in Salisbury, N. Carolina, I leave the sum of ($500.00) five hundred dollars. To the Red Cross of Salisbury, N. Carolina, I leave five hundred ($500.00) dollars. To my sister Mrs. Camille H. Wolfe, I leave my furniture, household effects and personal property. The balance of my estate I leave to the National Red Cross society of America."

The assets of the testatrix on 5 August, 1953, the date of her death, and other particulars, are set forth in connection with opinion on prior appeal, when the cause was remanded for construction of the will in the light of "circumstances attendant" when the will was executed, to wit, 2 October, 1951.

Thereafter, in the Superior Court, the defendants supplemented their original answers and offered evidence purporting to relate to such "circumstances attendant"; and the court, predicated on certain *findings of fact,* entered judgment that the words, "personal property," as used by the testatrix, included cash, bonds and securities, denoting all assets other than real estate, and that defendant Wolfe was entitled thereto.

Defendant Red Cross excepted and appealed.

*James L. Woodson and Nelson Woodson for defendant American National Red Cross, appellant.*

*Clarence Kluttz and Lewis P. Hamlin, Jr., for defendant Wolfe, appellee.*

BOBBITT, J.   Reference is made to the statement of facts and opinion on said prior appeal.  *Trust Co. v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246. There is no need to discuss further the reasons why the cause was then remanded.   Too, the principles of law then stated will be treated as established without further citation of authority.  Suffice to say, we did not then construe the will; nor did we undertake to mark out what portions, if any, of the evidence offered at the first hearing, but not considered by the Court, were relevant and competent.  See: *Collier v. Mills, ante,* 200, 95 S.E. 2d 529.

In the construction of the will in the light of "circumstances attendant" when the will was executed, these well established rules are pertinent:

1. To ascertain the intent of the testator, the will must be considered as a whole.  If possible, meaning must be given to each clause, phrase and word.  If it contains apparently conflicting provisions, such conflicts must be reconciled if this may reasonably be done.  *Williams v. Rand,* 223 N.C. 734, 737, 28 S.E. 2d 247; *Holland v. Smith,* 224 N.C. 255, 257, 29 S.E. 2d 888; *Schaeffer v. Haseltine,* 228 N.C. 484, 489, 46 S.E. 2d 463; *Coppedge v. Coppedge,* 234 N.C. 173, 176, 66 S.E. 2d 777. As succinctly expressed by this Court in *Edens v. Williams,* 7 N.C. 27, 31, decided May Term, 1819: "Every part of a will is to be considered in its construction, and no words ought to be rejected, if any meaning can be possibly put upon them.  Every string should give its sound."

2. When undertaking to reconcile apparently conflicting provisions "greater regard must be given to the dominant purpose of a testator than to the use of any particular words."  *Trust Co. v. Waddell,* 234 N.C. 454, 461, 67 S.E. 2d 651.  If it may reasonably be done, apparently inconsistent subordinate provisions must be given effect in accordance with the general prevailing purpose of the testator.  *Schaeffer v. Haseltine, supra; Coppedge v. Coppedge, supra.*

In our opinion, the words written by Mrs. Upton, considering her will as a whole, show clearly that her dominant purpose was to leave the bulk of her estate to charitable causes.   The sentence, "To my sister Mrs. Camille H. Wolfe, I leave my furniture, household effects and personal property," is both preceded and followed by dispositive provisions to charitable causes.

Did the testatrix use the words "personal property" to denote everything she owned except real property?  The court below, in accordance

with defendant Wolfe's contention, answered "Yes." We are constrained to hold otherwise, namely, that when used in the context, "my furniture, household effects and personal property," the personal property referred to was *ejusdem generis*, that is, tangible articles of household and personal use.

It is noteworthy that the dispositive words used by the testatrix are "will and bequeath," "will," and "leave." The word "devise" does not appear.

If the words "personal property" were construed to denote everything the testatrix owned except real property, no significant meaning can be given to her use of the words "furniture" and "household effects." The concise provisions of her will indicate that the testatrix did not use superfluous words. Meaning is given to these words if we consider the word "household" as modifying both "effects and personal property."

The testatrix, in prior provisions of her will, had left specific charitable legacies, aggregating $11,500.00, which, if she owned no real property, could be paid only from her then assets, to wit, cash, bonds and securities. It appears, therefore, that the testatrix did not intend to leave to Mrs. Wolfe all of her personal property of every kind and character. It is noteworthy that words such as "all" or "all the remainder" nowhere appear in association with the words "personal property."

Moreover, if the testatrix owned no real property, the construction for which defendant Wolfe contends would give no significance whatever to the final sentence: "The balance of my estate I leave to the National Red Cross Society of America." It should be noted that this sentence, rather than the bequest to Mrs. Wolfe, constitutes the residuary clause of the will. Decisions to the effect that, because of the presumption against partial intestacy, the rule of *ejusdem generis* is not generally applied to a residuary clause, *e.g.*, *Ferguson v. Ferguson*, 225 N.C. 375, 35 S.E. 2d 231, have no application here.

We agree with the contention that the so-called rule of *ejusdem generis* does not arbitrarily control in the construction of a will. While generally referred to as a rule of construction, perhaps it is more accurate to use this expression to denote the construction adopted by the court from the consideration of a will as a whole.

The condition, nature and extent of Mrs. Upton's estate *when she made her will* are relevant "circumstances attendant." Did she own real property *then?*

Admissions in the pleadings suffice to establish that she owned no real property at the time of her death; and there is no evidence or contention that she acquired or sold any real property after she made her will. Moreover, it appears *now* from uncontradicted evidence offered by defendant Wolfe that Mrs. Upton owned no real property when she

made her will. True, the court's finding was: "12. On October 2, 1951, the testatrix owned no real estate in Rowan County, N. C., or in Orleans Parish, Louisiana. The Court does not consider the evidence satisfactory and does not determine whether she owned any real estate elsewhere." However, persons intimately associated with her across the years, including defendant Wolfe, testified that they knew of no real estate she had owned, located elsewhere, except a summer cottage in Bay St. Louis, Mississippi, which she had sold in 1948 or prior thereto. It would be fanciful to predicate decision on a speculation that she might have owned some unidentified real property located elsewhere than in the communities in which she had resided when neither her executor nor any of her kin had knowledge or information thereof.

In short, it appears from uncontradicted evidence offered by Mrs. Wolfe that the estate of the testatrix on 2 October, 1951, the date of the will, consisted of assets of the kind and character owned by her on 5 August, 1953, the date she died, to wit: cash, including bank deposits, bonds and securities.

Testatrix, who had resided in New Orleans, moved to Salisbury in 1948. She purchased a residence on Mitchell Avenue, the only property in North Carolina ever owned by her. After a fire on 6 June, 1951, this residence was unfit for use; and, without making repairs, testatrix sold this property on 25 August, 1951.

The court made this finding: "11. Following the sale of the Salisbury house, the testatrix consulted a real estate agency and was looking at houses and lots offered for sale in Salisbury at or about the time the will was written and subsequently." We need not decide whether there is competent evidence to support the implication, if such was intended, that this occurred prior to 2 October, 1951, the date of the will. The fact is that testatrix owned no real estate when she made her will. This has significance only as it may enlighten the court as to her intention as expressed in her will. If she had purchased real estate thereafter, the price paid therefor would have depleted the cash, bonds and securities constituting her assets. We cannot accept the suggestion that it was testatrix' intent to leave defendant Red Cross real property, if perchance she should purchase real property, but that in the event she did not do so the residuary clause in favor of defendant Red Cross would be devoid of meaning. No sound reason appears why the testatrix would prefer or intend to leave to defendant Red Cross real estate rather than assets of the kind and character she owned when she made the will.

It is noted that the judgment, from which this appeal is taken, sets forth *as findings of fact* the following: "15. At the time the will was written, the testatrix understood the term 'personal property' to include cash, bonds, and securities. 16. The testatrix, Addie Hereford Upton,

used the term 'personal property' in her will to include cash, bonds, and securities." These are not findings of fact as to circumstances attendant when the will was made, but rather reflect the court's view as to the proper construction of the will. Whether the testatrix so intended, is the sole question *of law* presented to the Court for decision.

The "circumstances attendant" when the will was made refer to objective factual data, not to the intent of the testatrix. In short, they are *facts* of which the testator *had knowledge* when she made her will; and such facts may or may not aid the court in the construction of the terms thereof.

The intent of the testatrix must be ascertained from her written words. Parol evidence of her declarations is not competent as an aid in the construction of her will, whether made before, after or at the time she made it. *Reeves v. Reeves,* 16 N.C. 386; *Worth v. Worth,* 95 N.C. 239; *Patterson v. Wilson,* 101 N.C. 594, 8 S.E. 341; *In re Shelton's Will,* 143 N.C. 218, 55 S.E. 705; *Raines v. Osborne,* 184 N.C. 599, 602, 114 S.E. 849; *Holmes v. York,* 203 N.C. 709, 166 S.E. 889; *Reynolds v. Trust Co.,* 201 N.C. 267, 159 S.E. 416. As stated by *Merrimon, J.* (later *C. J.*), in *Patterson v. Wilson, supra:* "The very purpose of putting the will in writing was to declare and express the testator's settled intentions in respect to his property, to establish the certain evidence of his intentions, and such evidence must prevail, no matter what he may have said before or after its execution."

Under the rule stated in the preceding paragraph, testimony as to testatrix' declarations, if relevancy were conceded, must be disregarded as incompetent. We give two instances of testimony in this category. First: The testimony of Ralph Hereford, a nephew, offered by Mrs. Wolfe, that years ago in New Orleans, Louisiana, Mrs. Upton told him "in so many words" that "she had some stocks and bonds which she considered her personal property." Second: The testimony of Mrs. Harding and Mrs. Warlick, nieces, offered by the Red Cross, that on frequent occasions before she made her will, Mrs. Upton had spoken highly of the work of the Charity Hospital, New Orleans, Louisiana, and of the Red Cross; and the testimony of Mrs. Wolfe that she did not remember hearing Mrs. Upton speak of "the National Red Cross Society."

The relationships between Mrs. Upton and the beneficiaries named in her will are relevant "circumstances attendant."

We accept the court's findings of fact bearing upon the close relationship subsisting between Mrs. Upton and Mrs. Wolfe. Indeed, the evidence bearing upon Mrs. Upton's family relationships is free from contradiction. A brief recital must suffice.

Mrs. Upton and Mrs. Wolfe were sisters, both widows, the only survivors of six brothers and five sisters. They had some twenty-five

blood nephews and nieces, with whom their relationships were friendly and cordial.

Until 1948 Mrs. Upton had lived in New Orleans. Her husband, an active, full-time notary public, died in 1923. Mrs. Upton had nó lineal descendants.

Mrs. Wolfe's husband, who had been manager for Duke Power Company in Salisbury for a number of years, died in 1929. Some two years later, Mrs. Wolfe left her Salisbury home and went back to New Orleans and lived with Mrs. Upton. From time to time other relatives resided with them.

In 1948, Mrs. Upton requested Mrs. Warlick, a niece then living in Salisbury, to visit her in New Orleans. As a result of this visit, Mrs. Upton sold her New Orleans property; and she and Mrs. Wolfe moved to Salisbury. Mrs. Upton then purchased the Mitchell Avenue residence in which the two sisters, along with Mr. and Mrs. Warlick and their two boys, lived until May, 1951. The Warlicks moved out when Mrs. Upton decided to convert the residence into apartments, and this work was in progress when the fire occurred. After the fire, the two sisters moved into the home of Mr. and Mrs. Clamp, the latter, a daughter of Mrs. Wolfe; but soon thereafter Mrs. Upton suffered a heart attack and was in the hospital two months. During this time, the Clamps remodeled their residence, constructing a separate apartment for rental. Except for the time she was in the hospital, Mrs. Upton lived with Mrs. Wolfe in this apartment until Mrs. Upton's death. Mrs. Wolfe continued to reside there. During their joint occupancy, Mrs. Upton was the household manager and paid the greater part of their expenses, while Mrs. Wolfe contributed $40.00 per month.

The description of the articles of personal property, valued by the executor at $300.00 and delivered by it to Mrs. Wolfe, indicates that the apartment was well and comfortably furnished.

Mrs. Wolfe had four children, Mrs. Clamp and three sons, all residents of North Carolina. Mrs. Clamp resided in Salisbury. One son resided nearby in Spencer. The other two sons resided in Henderson. Her son-in-law and each of her sons had employment and apparently were in comfortable circumstances. Indeed, Mrs. Wolfe describes one of them as "a very successful man"—"the operator of a very successful quarry." Mrs. Upton had knowledge of the fact that Mrs. Wolfe had an estate of her own, worth some $7,000.00. Mrs. Upton had made these separate provisions for Mrs. Wolfe, viz.: Before leaving New Orleans, Mrs. Upton had given to Mrs. Wolfe some diamonds of undisclosed value. She had purchased $10,000.00 of U. S. Bonds, Series G, bearing $2\frac{1}{2}\%$ interest, payable to Mrs. Wolfe upon Mrs. Upton's death. When Mrs. Upton died, these bonds were worth $10,000.00. She had purchased an insurance contract providing for the payment to Mrs.

Wolfe of $45.00 per month for life, if she survived Mrs. Upton. She had purchased another insurance contract, on which, upon Mrs. Upton's death, Mrs. Wolfe was entitled to receive a lump sum of $1,005.95 or $15.05 semi-annually as long as she lived. The foregoing items were kept in Mrs. Wolfe's bank box, along with cash which Mrs. Upton had supplied to Mrs. Wolfe to pay for Mrs. Upton's funeral arrangements. Upon Mrs. Upton's death, Mrs. Wolfe became the owner of the bonds and the beneficiary of the insurance contracts.

While fully recognizing the close relationship between the elderly sisters, we cannot say that the foregoing circumstances attendant support the construction of the will for which defendant Wolfe contends. Indeed, it seems more reasonable to conclude therefrom that Mrs. Upton intended to provide and did provide for Mrs. Wolfe, apart from furniture, household and personal effects, by making separate arrangements for her independent of the provisions of her will.

A further contention by defendant Wolfe should be considered. It is based primarily on this finding of fact: "14. The testatrix was, by reason of her background and experience, familiar with business and legal terminology, and had previously used the term 'personal property' to include intangibles, she having worked in the office of her husband when he was a full time practicing Notary Public in the State of Louisiana."

While we forego an analysis in detail of the voluminous testimony and documentary evidence upon which this finding is based, a brief summary is as follows: Under Louisiana law a notary public is an important public official, with established qualifications, whose functions include services in connection with wills, estate successions, inventories, etc. Prior to 1923 Mrs. Upton had assisted her husband in his work. Upon his death, she served as co-executor of his will, his estate consisting of household furniture and effects, cash in banks, bonds, notes, jewelry and real estate. Later, in 1941, she served as executrix of the estate of one George H. Jahns. The evidence discloses that on occasions, in connection with the handling of these two estates, the words "personal property" were used to denote a general classification of all property other than real estate. Unquestionably, in North Carolina as well as in Louisiana the words "personal property" are often used in that sense. Assuming the competency of these events of 1923 and 1941, we do not think they bear significantly upon the meaning of the words "personal property" when considered in the context of the testatrix' will. Indeed, an examination of the will of Mrs. Upton's deceased husband, referred to below, would seem rather to support the construction we place upon Mrs. Upton's will.

As shown in the record offered by defendant Wolfe, Mr. Upton's will was as follows: He made four specific cash bequests, then made a

specific bequest of his watch, chain and locket, and then provided: "I give and bequeath *the balance of my estate* to my wife Addie H. Upton." (Italics added.)   True, the words "personal property" were not used in connection with any specific bequest.   However, the words "the balance of my estate" are the identical words used by Mrs. Upton in the residuary clause of her will.   Under the quoted words in her husband's will, Mrs. Upton received, other than the specific bequests, her husband's entire estate, "as the universal heir and legatee."   Her knowledge of this exact phraseology in her husband's will and of its legal effect and her use of the identical phraseology in the residuary clause of her own will would seem to negative any suggestion that no significant meaning should be given to this provision: *"The balance of my estate* I leave to the National Red Cross society of America." (Italics added.)

The findings of fact, other than those quoted herein, and also many facts not incorporated in the court's findings of fact, are based upon uncontradicted evidence.   We cannot discuss in detail each finding or every phase of the evidence.   Certainly, the able and diligent counsel for defendant Wolfe have brought forward every fact that might lend any measure of support to her position.   Suffice to say, each has been carefully considered.

Our conclusion is that the provision, "To my sister Mrs. Camille H. Wolfe, I leave my furniture, household effects and personal property," when the will as a whole is considered, manifests the testatrix' intention to leave to Mrs. Wolfe, under the will, only tangible articles of household and personal use, and that the circumstances attendant when the will was made strengthen rather than impair this construction.   It appearing that the executor has delivered all of such articles to defendant Wolfe and that it has paid the specific cash bequests, it follows that defendant Red Cross, as residuary legatee, is entitled to receive, under the will, the balance of the estate remaining in the hands of the executor, consisting of cash, bonds and securities, after payment by the executor therefrom of the costs of administration, including the costs of this action, taxes and valid claims, if any, against the estate.

Accordingly, there is error in the judgment of the court below; and the cause is remanded for judgment in accordance with the construction of the will as declared herein.

Error and remanded.