IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-535

No. COA20-861

Filed 5 October 2021

Forsyth County, Nos. 19 CVS 4115; 18 E 1233

LAURA ELIZABETH (LAIL) TREADAWAY, BRADLEY CHARLES LAIL and GRAHAM SCOTT LAIL, Plaintiffs,

v.

CHARLES RAY PAYNE, individually, and BRYAN C. THOMPSON, as Public Administrator for the Estate of CHARLES MELTON MULL, Defendants.

Appeal by defendant Charles Ray Payne from judgment and order entered 21 July 2020 by Judge David L. Hall in Forsyth County Superior Court. Heard in the Court of Appeals 24 August 2021.

> *Craige Jenkins Liipfert & Walker LLP, by William W. Walker, for plaintiffs-appellees.*
>
> *Crumpler Freedman Parker & Witt, by Stuart L. Brooks, for defendant-appellant Charles Ray Payne.*

ZACHARY, Judge.

¶ 1 Defendant-appellant Charles Ray Payne appeals from the trial court's order and declaratory judgment determining that the will of Charles Melton Mull ("Testator") contained a patent ambiguity; construing Testator's intent to convey certain of his property to Plaintiffs-appellees Laura Treadaway, Bradley Lail, and Scott Lail (collectively, "Plaintiffs"); and concluding that Defendant was liable to Plaintiffs for conversion. After careful review, we affirm.

## *Background*

¶ 2    This appeal concerns the trial court's interpretation of the phrase "personal property" as used in Testator's will. Specifically, at issue is the proper disposition of the funds and securities (collectively, "the contested property") held in Testator's Ameritrade investment account and Wells Fargo checking, savings, and brokerage accounts, as well as Testator's interest in Furniture Enterprises of Hickory. Defendant argues that Testator's will clearly evidences Testator's intent to bequeath the contested property to him, while Plaintiffs argue that Testator intended that the contested property pass to them.

¶ 3    On 21 February 2018, Testator executed his last will and testament (the "Will"). In his Will, Testator appointed Defendant—with whom Testator had lived from 1994 to 2001 and again from 2015 until Testator's death on 1 May 2018—to serve as the executor of his estate. Defendant is named in the Will as a beneficiary of Testator's estate, as are Plaintiffs.

¶ 4    Throughout his Will, Testator repeatedly refers to his "personal property" or "personal possessions." Article III of the Will first provides, in pertinent part:

> Subject to the special bequests in Article V, I *bequeath and devise all my personal property*, including my automobile, furniture, clothing, watches, rings, electronics, art and any currency which I may have on my person, in my home or in my automobile in fee simple to my partner, [Defendant].

(Emphasis added).

¶ 5     Article III then directs the executor to sell the condominium in which Defendant and Testator resided no sooner than six months after Testator's death, during which time the executor "shall be entitled to *sell* [*Testator's*] *personal possessions* (which have not been listed herein as being devised to [Testator's] partner, [Defendant])." (Emphasis added). Article III continues:

> After the end of the said six months after my demise, I direct my Executor to sell *all of my remaining personal possessions at the condominium*; . . . .
>
> The *net proceeds from the sale of the personal possessions and the condominium shall be used to fund my bequest set forth in Article V*, with the remaining sale proceeds hereby devised in fee simple to my partner, [Defendant].

(Emphases added).

¶ 6     Article IV names Plaintiffs—Testator's niece and nephews—as the residuary beneficiaries of the Will:

> All the residue of the property which I may own at the time of my death, real or personal, tangible and intangible, of whatever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this will, including all lapsed legacies and devises, or other gifts made by this will which fail for any reason, I bequeath and devise, in fee simple in equal shares, subject to special bequests in Article V, to [Plaintiffs].

¶ 7     Article V sets forth the specific bequests referenced in Articles III and IV, items (a)–(i) of which constitute a series of bequests of specific sums of money to particular named individuals, together with other bequests of personal property:

> j. I bequeath and devise *any funds I may have at the time of my demise with the Winston-Salem Foundation, to the University of North Carolina School of the Arts in Winston-Salem, North Carolina*, to be used for landscaping and outside art.
>
> k. I bequeath and devise *any outstanding loan balance owed to me by Jeff Propst or his successors at the time of my demise in equal shares to* [*Plaintiffs*].
>
> l. I direct that *any motor vehicles I may own at the time of my demise* be sold within thirty days of my demise. I bequeath and devise *all of the net proceeds from the said sales to the University of North Carolina School of the Arts in Winston-Salem, North Carolina.*

(Emphases added).

Following Testator's death on 1 May 2018, the Forsyth County Clerk of Court admitted the Will to probate, and on 4 June 2018, Defendant qualified as executor of the estate. In the fall of 2018, Defendant sold the condominium, used the proceeds from its sale to satisfy the Article V specific bequests, and transferred the net proceeds into a personal account in his name. Defendant also closed Testator's Wells Fargo and Ameritrade accounts and transferred the proceeds from these accounts into his personal accounts.

On 10 July 2019, Plaintiffs filed a complaint in Forsyth County Superior Court, seeking a declaratory judgment as to whether the Will contained a patent ambiguity with regard to the meaning of the phrase "personal property" and whether the contested property passed to Plaintiffs as residuary beneficiaries under the

provisions of Article IV of the Will. Plaintiffs also asserted claims for conversion and breach of fiduciary duty, and moved the trial court for injunctive relief, requesting that the contested property be held in escrow pending resolution of the parties' dispute. On 15 July 2019, the trial court entered a consent order reflecting the parties' agreement that Defendant would freeze the accounts holding the contested property pending further order of the court.

On 16 September 2019, Defendant filed a motion to dismiss Plaintiffs' complaint. With the parties' consent, the Clerk of Court removed Defendant as executor and appointed Bryan C. Thompson, the Public Administrator, to serve as administrator c.t.a. of the estate.[1] Plaintiffs filed an amended complaint on 30 October 2019, naming Thompson in his representative capacity as a party to this action, and then filed a motion for summary judgment the following day. On 14 November 2019, Defendant filed a motion to dismiss the amended complaint. On 21 November 2019, the trial court entered an order denying both Plaintiffs' motion for summary judgment and Defendant's motion to dismiss.

On 29 June 2020, the matter came on for trial in Forsyth County Superior Court before the Honorable David L. Hall. On 21 July 2020, the trial court entered its order and declaratory judgment in which it concluded, *inter alia*, that (1) the Will

---

[1] Thompson is a party to this action in his representative capacity only, and he has not participated in this appeal.

contained a patent ambiguity with respect to the phrase "personal property" as used in Articles III, IV, and V; (2) the contested property and Testator's interest in Furniture Enterprises passed to Plaintiffs as residuary beneficiaries; and (3) Defendant was liable to Plaintiffs for conversion of the proceeds from Testator's closed Wells Fargo and Ameritrade accounts. The trial court further determined that Defendant was not liable to Plaintiffs for breach of fiduciary duty. Defendant timely filed notice of appeal.

## *Discussion*

On appeal, Defendant argues that (1) the trial court erred by concluding that the Will contained a patent ambiguity requiring judicial construction, and (2) the trial court's conclusions of law are not supported by the text of the Will or Testator's circumstances at the time that the Will was executed.

### I. *Standards of Review*

"The interpretation of a will's language is a matter of law." *Brawley v. Sherrill*, 267 N.C. App. 131, 133, 833 S.E.2d 36, 38 (citation omitted), *appeal dismissed*, 373 N.C. 587, 835 S.E.2d 463 (2019). We review questions of law de novo. *Id.*

"The standard of review in declaratory judgment actions where the trial court decides questions of fact is whether the trial court's findings are supported by any competent evidence. Where the findings are supported by competent evidence, the trial court's findings of fact are conclusive on appeal." *Nelson v. Bennett*, 204 N.C.

App. 467, 470, 694 S.E.2d 771, 774 (2010) (citation omitted). "Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." *In re Estate of Harper*, 269 N.C. App. 213, 215, 837 S.E.2d 602, 604 (2020) (citation and internal quotation marks omitted).

## II.     *Patent Ambiguity*

Defendant argues that the trial court's conclusion that the Will contained a patent ambiguity as to the phrase "personal property" is not supported by the text of the Will, is "speculative about Testator's intent, and fails to adhere to our law's principles of testamentary interpretation." We disagree.

"Whenever the meaning of a will or a part of a will is in controversy, the courts may construe the provision in question and declare its meaning." *Mitchell v. Lowery*, 90 N.C. App. 177, 179–80, 368 S.E.2d 7, 8, *disc. review denied*, 323 N.C. 365, 373 S.E.2d 547 (1988). It is well settled that "the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy." *Brawley*, 267 N.C. App. at 133, 833 S.E.2d at 38 (citation omitted). "The interpretation of any will is as simple, or complicated, as its language. Where the language employed by the testator is plain and its import is obvious, the judicial chore is light work; . . . the words of the testator must be taken to mean exactly what they say." *Id.* at 134, 833 S.E.2d at 38 (citation and internal quotation marks omitted).

"Resort to canons of construction is warranted only when the provisions of a will are set forth in unclear, equivocal, or ambiguous language." *Id.*

"[W]here parts of the will are dissonant or create an ambiguity, the discord thus created must be resolved in light of the prevailing purpose of the entire instrument." *Mitchell*, 90 N.C. App. at 180, 368 S.E.2d at 9. "In attempting to determine the testator's intention, the language used, and the sense in which it is used by the testator, is the primary source of information, as it is the expressed intention of the testator which is sought." *Brawley*, 267 N.C. App. at 133–34, 833 S.E.2d at 38 (citation omitted). "To ascertain the intent of the testator, the will must be considered as a whole. If possible, meaning must be given to each clause, phrase and word. If it contains apparently conflicting provisions, such conflicts must be reconciled if this may reasonably be done." *Wachovia Bank & Tr. Co. v. Wolfe* (*Wolfe II*), 245 N.C. 535, 537, 96 S.E.2d 690, 692 (1957).

In the present case, the trial court concluded that the Will contained a patent ambiguity "in its description and attempts to devise personal property," with "several inconsistent passages that are mutually exclusive[.]" "[A] patent ambiguity occurs when doubt arises from conflicting provisions or provisions alleged to be repugnant." *Wachovia Bank & Tr. Co. v. Wolfe* (*Wolfe I*), 243 N.C. 469, 478, 91 S.E.2d 246, 253 (1956). "The meaning of the word 'property' and of the words 'personal property' varies according to the subject treated . . . and according to the context." *Poindexter*

*v. Wachovia Bank & Tr. Co.*, 258 N.C. 371, 379, 128 S.E.2d 867, 874 (1963). "Courts have frequently held that the words 'personal property' are susceptible of two meanings: one, the broader, including all property which is the subject of ownership, except land or interests in land; the other, more restricted, oftentimes embraces only goods and chattels." *Id.* at 379–80, 128 S.E.2d at 874. "These words, 'personal property,' have a popular meaning different from their technical meaning, and are frequently used as including goods and chattels only, and embracing such movable and tangible things as are the subject of personal use." *Id.* at 380, 128 S.E.2d at 874.

¶ 19        Here, the trial court correctly determined that Testator's Article III bequest of "all my personal property" to Defendant conflicts with other provisions of his Will. For instance, subsection (d) of Article III permits the executor "to sell [Testator's] personal possessions (which have not been listed herein as being devised to [Testator's] partner, [Defendant])." This authorization suggests that Testator intended that there would be personal possessions that were not otherwise included as part of the bequest to Defendant of "all [Testator's] personal property[.]" Similarly, Article III also directs the executor to sell "all [Testator's] remaining personal possessions at the condominium" and to use the net proceeds from these sales to fund some of the specific bequests in Article V. However, the very existence of "remaining personal possessions at the condominium" is incompatible with a bequest of "all [Testator's] personal property" to Defendant. In addition, the provisions of Article V,

subsection (l) are unquestionably inconsistent with the provisions of Article III bequeathing all of Testator's personal property to Defendant. Subsection (l) expressly requires the sale of "any motor vehicles [Testator] may own at the time of [Testator's] demise" and specifically directs that the net-sales proceeds be distributed to the University of North Carolina School of the Arts, while "[Testator's] automobile" was left to Defendant in Article III.

¶ 20      That there is discord in the language employed by Testator in his Will is beyond cavil, and judicial construction was therefore appropriate to ascertain his intent, "in light of the prevailing purpose of the entire instrument." *Mitchell*, 90 N.C. App. at 180, 368 S.E.2d at 9. Thus, the trial court did not err in concluding that the Will contained a patent ambiguity in the various provisions regarding Testator's "personal property." Having so concluded, we turn to Defendant's second argument, concerning the trial court's construction of the Will.

### III.    *Construction of the Will*

¶ 21      In determining that the Will contained a patent ambiguity, the trial court made the following findings of fact, which Defendant challenges on appeal:

> 47. The Will, in its description and attempts to devise personal property, contains several inconsistent passages that are mutually exclusive, including, without limitation, Article III, lines 1-4; Article III, paragraph two, subsection (d); Article III, paragraph three, lines 1-2; Article III, paragraph four (in its entirety); Article V, paragraph 1, lines 1-2 and Article V, subsections (j), (k), and (l).

> 48. The inconsistent descriptions of personal property as described herein, without limitation, cannot be construed, nor Testator's intent be determined, without considering the circumstances attendant to the Testator and the Will.

¶ 22    These findings of fact are supported by competent evidence, and thus are conclusive on appeal. *See Nelson*, 204 N.C. App. at 470, 694 S.E.2d at 774. However, Defendant contends that these findings of fact are actually conclusions of law, to be reviewed de novo. "Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law." *Woodard v. Mordecai*, 234 N.C. 463, 472, 67 S.E.2d 639, 645 (1951). This is a distinction without a difference here, where we have independently reached the same conclusions, as discussed above. Defendant's challenge to these findings of fact is overruled.

¶ 23    Defendant further challenges that portion of the trial court's finding of fact #49 specifically construing Testator's intent:

> f. The terms of the Will that are not ambiguous, as well as the circumstances attendant to the Testator's life and the making of the Will, as found above by the undersigned, demonstrate that Testator intended that all other intangible personal property, including his interest in the family business Furniture Enterprises of Hickory, and monies and securities Testator had in investment accounts with Ameri[t]rade and Wells Fargo at the time of his death, pass to the residuary beneficiaries ([P]laintiffs), as set forth in Article IV, the Residue of Testator's Estate[.]

¶ 24    Defendant generally challenges the trial court's interpretation of Testator's

intent, which the record reflects that the court gleaned from the text of the Will and "the circumstances attendant to the Testator's life and the making of the Will[.]" Indeed, Defendant repeatedly refers to his contentions as the "plain text" or "plain language" interpretation of Testator's Will. Consequently, he posits that no ambiguity exists, stating that "the trial court made *no* specific findings to justify the conclusion that the terms of the Will should be re-cast or to establish Plaintiffs should take the contested property." However, we have already concluded that the text of the Will is patently ambiguous as to the personal property in question. Accordingly, there are no "re-cast" terms; there is only the trial court's attempt to reconcile the "apparently conflicting provisions" of the Will as reasonably as may be done in discerning Testator's intent. *Wolfe II*, 245 N.C. at 537, 96 S.E.2d at 692.

¶ 25    Further, Defendant does not challenge the preceding portions of finding of fact #49—subsections (a) through (e)—that detail the relevant, unambiguous provisions of the Will and explain Testator's intent as to each of those provisions. The trial court meticulously analyzed Testator's intent, as best it could be ascertained from the text of the Will's unambiguous provisions and from the relevant attendant circumstances:

> a. Testator intended in Article III that Testator's residence . . . (hereinafter referred to as "Residence"), which he shared with [D]efendant, be held in trust by [D]efendant upon Testator's death for no fewer than six (6) months, and that [D]efendant thereafter sell the Residence in order to fund the special devises found in Article V, subsections (a) through (i), with the remaining proceeds from the sale of

the Residence to pass to [D]efendant in fee simple;

b. Testator intended that [D]efendant be allowed to remain at the Residence, which Testator had shared with [D]efendant, for at least six (6) months after Testator's death; Testator's intention was to give [D]efendant flexibility to maximize the funds going to [D]efendant from the sale of the Residence;

c. Testator intended that [D]efendant hold Testator's items of tangible personal property, located in the Residence or on Testator's person, in trust for no fewer than six (6) months following Testator's death, including inherently personal items of tangible personal property such as Testator's valuable fine art collection, personal effects in the Residence, cash money on Testator's person or in the Residence, furnishings in the Residence, and other items of tangible personalty located in the Residence, in the event that those items of tangible personal property should be needed to fund Testator's special devises listed in Article V, subsections (a) through (i), and if not needed to fund the special devises, pass to [D]efendant in fee simple;

d. Testator specifically intended that certain intangible personal property, such funds held by the Winston-Salem Foundation, be distributed to the North Carolina School of the Arts upon Testator's death, as provided in Article V, subsection (j);

e. Testator specifically intended that certain intangible personal property, such as monies owed to Testator by Jeff Propst and reflected in the Promissory Note in favor of Testator . . . , pass to [P]laintiffs upon Testator's death, as provided in Article V, subsection (k)[.]

¶ 26    These unchallenged findings of fact—which are binding on appeal, *Harper*, 269 N.C. App. at 215, 837 S.E.2d at 604—support the trial court's construction of Testator's intent with respect to the contested property. The trial court's thorough

analysis reflects an examination of Testator's intent that squares the initial bequest of all of Testator's personal property, and the repeated conflicting bequests of Testator's personal property thereafter, with Testator's evident intent to leave certain intangible property, which the trial court determined included the contested property, to Plaintiffs. After careful review of the trial court's analysis, we conclude that the trial court properly resolved the discord created by the patent ambiguity "in light of the prevailing purpose of the entire instrument." *Mitchell*, 90 N.C. App. at 180, 368 S.E.2d at 9. We are unpersuaded by Defendant's arguments to the contrary. Accordingly, we affirm the trial court's order and declaratory judgment.

## *Conclusion*

The trial court did not err in concluding that Testator's Will contained a patent ambiguity as regards the contested property. Nor did the trial court err in interpreting Testator's intent from the text of the Will and the relevant attendant circumstances. Thus, the trial court's order and declaratory judgment is affirmed.

AFFIRMED.

Judges MURPHY and GORE concur.