BESS WOODARD CAMPBELL v. JOHN R. JORDAN, JR., TRUSTEE OF THE ESTATE OF MOSES W. WOODARD, DECEASED; MOSES W. WOODARD, III; NANCY ELIZABETH WOODARD AND MARY WHITE WOODARD McDONALD

No. 522

(Filed 23 August 1968)

1. **Wills § 28— interpretation of a will**
    In interpreting a will, the testator's intent is gathered from the entire instrument.

2. **Trusts § 10— agreement by beneficiaries to postpone trust termination**
    Even though under the terms of a will a trust is to terminate at a certain time, the beneficiaries may, by agreement, postpone its termination.

3. **Trusts § 10— agreement that trustee continue to administer vested interests in trust corpus — action by remaining beneficiaries to compel trust termination as to vested interest**
    Where under the terms of a testamentary trust a portion of the trust corpus vested in the children of a deceased income beneficiary in fee simple, free of the trust, the remaining income beneficiaries have no standing to object to an agreement whereby the trustee continues to administer the vested interest of the children as if it remained a part of the trust corpus absent a showing of injury; therefore, the remaining income beneficiaries may not compel the trustee to terminate the trust as to the deceased beneficiary's children by conveying to them their share of the trust corpus.

4. **Trusts § 6— trustee's discretion to convey corpus to beneficiary**
    Where testator's will created a trust for the benefit of his wife, son and daughter during their lives, with the estate ultimately vesting in fee in the issue of the son and daughter, a provision of the will giving the trustee authority to convey to a beneficiary any part or all of the beneficiary's share of the trust corpus if the trustee deems it necessary or best for the *cestui* and consistent with the welfare of testator's family and estate *is held* not to give the trustee unbridled discretion to convey trust assets to a beneficiary, but the beneficiary must show substantial economic need or circumstances indicating that his best interest requires a conveyance before the trustee can invade the corpus in his behalf.

5. **Trusts § 5; Wills § 28— construction of trusts — settlor's intention in paramount**
    A settlor's intention is always paramount to the wishes of a beneficiary and, unless his purpose is contrary to law or public policy, the courts will give it effect.

LAKE, J., took no part in the consideration or decision of this case.

APPEAL by defendants Woodard and McDonald from *Canaday, J.*, 18 September 1967 Civil Session of WAKE.

Action for a declaratory judgment to construe the will of Moses W. Woodard (testator). The basic facts are admitted and stipulated.

Testator died 27 April 1915. Surviving him were his wife, Elizabeth Woodard (wife), a son, Moses W. Woodard, Jr. (Woodard, Jr.), and a daughter, Bess Woodard Campbell (plaintiff). Woodard, Jr., died 6 January 1959, survived by three children, defendants Moses W. Woodard, III, Nancy Elizabeth Woodard, and Mary Woodard McDonald (appellants), all of whom are of age. Wife died 7 November 1960, leaving a will in which she devised all of her property to plaintiff. Plaintiff, who was born 4 February 1885, has no lineal descendants.

Testator's will, which was dated 14 August 1913 and duly probated 4 May 1915, devised his residuary estate to Joseph G. Brown in trust for his wife, son, and daughter. Brown (and any successor trustee or trustees) was given plenary and discretionary power to manage, sell, convey, invest and reinvest the corpus of the trust. The present trustee, defendant John R. Jordan, Jr., was duly appointed by the Clerk of the Superior Court of Wake County on 20 October 1966. The trust estate consists of two lots of commercial property in the City of Raleigh. Tract No. 1 is located at the corner of Fayetteville and E. Martin streets and is known as 301-3-5-7-9 Fayetteville Street and 4 and 6 E. Martin Street. Tract No. 2 extends from Fayetteville Street to Salisbury Street; it is 224 Fayetteville Street and 223 S. Salisbury Street. Rentals from the store buildings on these properties constitute the estate's income.

Testator's will (summarized and quoted below) empowered the trustee "to dispose of such trust estate and the income therefrom as follows:·—"

A.   Until the marriage, or death of wife unmarried, "to divide semi-annually the net income . . . into as many equal shares as there shall be wife of mine then alive and unmarried, and son of mine then alive or son of mine dead but with lineal descendants then alive and daughter of mine then alive or daughter of mine dead but with lineal descendants then alive, and to pay such shares of income to such wife, son and daughter or the lineal descendants of such deceased son or daughter . . . per stirpes. . . .

"Upon the marriage or death of my said wife her interest in said trust estate shall cease and determine and shall go and belong to my said son and daughter and their lineal descendants in the same manner as is hereinafter provided for the holding and disposing of the original shares of said son and daughter in said trust estate."

B.   (Plaintiff)   During the life of daughter Bessie "to divide semi-annually the net income from said trust estate into as many equal shares as there shall be daughter of mine then alive and wife

of mine, then alive and unmarried, and son of mine then alive or son of mine dead but with lineal descendants then alive and to pay such shares of income to such daughter, wife and son or the lineal descendants of such deceased son . . . per stirpes. . . .

"Upon the death of my said daughter leaving lineal descendants surviving her, said trustees shall divide the corpus of said trust estate into as many equal shares as there shall be such daughter deceased and wife of mine alive, and unmarried, at that time and son of mine then alive or son of mine dead but with lineal descendants then alive and shall pay, deliver and convey absolutely and in fee simple one of said shares per stirpes, to such lineal descendants as my said daughter shall have so left her surviving, upon which payment the trust as to that share shall cease and determine.

"Upon the death of said Bessie without leaving any lineal descendants surviving her, then her interest in said trust estate shall cease and determine and shall go and belong to my said wife and son and his lineal descendants in the same manner as is herein provided for the holding and disposing of the original shares of my said wife and son in said trust estate."

C. During the life of Woodard, Jr., "to divide semi-annually the net income from said trust estate into as many equal shares as there shall be son of mine then alive and wife of mine then alive and unmarried and daughter of mine then alive or daughter of mine dead but with lineal descendants then alive and to pay such shares of income to such son, wife and daughter or the lineal descendants of such . . . daughter . . . per stirpes. . . .

"Upon the death of my said son leaving lineal descendants surviving him the said Trustee shall divide the corpus of such trust estate into as many equal shares as there shall be such deceased son and wife of mine alive and unmarried at that time, and daughter of mine alive or daughter of mine dead but leaving lineal descendants alive at that time and shall pay, deliver and convey absolutely and in fee simple one of said shares per stirpes to the lineal descendants which the said Moses shall have so left him surviving, upon which payment the trust as to that share shall cease and determine.

"Upon the death of said (son) without leaving any lineal descendants surviving him, then his interest in said trust estate shall cease and determine and shall go and belong to my said wife and daughter and such daughters' lineal descendants in the same manner as is herein provided for the holding and disposing of the original shares of said wife and daughter in said trust estate.

"ITEM 6th * * *

"The said trustees (if they in their judgment deem it necessary or best for the welfare of the cestui que trust, and consistent with the welfare of my family and estate) may from time to time, advance, deliver and convey absolutely and in fee simple, free from the trust, to my said wife if unmarried or to my said daughter after she arrives at the age of twenty-one years or to my said son after he arrives at the age of twenty-one years, any part or all of the share of the corpus of the trust estate above provided for his or her benefit. and thus terminate the trust so far as it affects the property so advanced, delivered and conveyed and the receipt of such cestui que trust shall be a complete release and discharge of said Trustees for so doing. But in case of such advancement the amount so advanced shall be counted in estimating the amount of the corpus of the estate for division and charged up to the share of the person so receiving. the same and deducted from the payment on division to his or her lineal descendants; and in estimating the income for division, interest shall be counted on such advancement at the rate of 3% per annum and be charged up to the share of income of the person so advanced and be deducted from the payment of income to the party so advanced or to his or her lineal descendants."

Upon the death of Woodard, Jr., his children, the appellants, were entitled to have the trust estate divided and to receive a one-third part of it free of the trust. However, they were of the opinion that to partition by sale valuable rental property on Raleigh's Fayetteville Street would reduce their income, the income of the other beneficiaries, and the value of the remaining corpus. Appellants therefore requested the trustees to maintain the corpus of the trust intact and to continue to administer it as before. Since 4 May 1915, the trust established by testator's will has been administered by successive trustees. Since the death of testator's wife, the trustee has paid the net income from the estate, one-half to plaintiff and one-half to appellants.

On 31 March 1967, plaintiff instituted this action for a construction of testator's will. She alleged, *inter alia,* that the children of her deceased brother are entitled to one-third of the corpus of the trust estate; that she is entitled to two-thirds — one-third in her own right and one-third as the sole beneficiary under her mother's will; that the trustee has the "mandatory duty" to terminate the trust as to these two one-third interests by conveyances in fee simple to her and to appellants. She prays that the will be thus construed and the trustee ordered to make conveyances in accordance with such

construction. Answering, defendant trustee denied that plaintiff is entitled as she alleged, but he joined in her prayer for "the interpretation of the testamentary trust and the direction of the court in regard thereto." Appellants, answering the complaint, admit that a one-third undivided interest in the trust estate is vested in them and that, upon demand, they would be entitled to a conveyance thereof. They aver, however, that a division of the trust property would not only reduce the beneficiaries' total income but would decrease the value of the trust corpus, and, for that reason, they desire the continuation of the status quo. They controvert plaintiff's conclusion that she acquired a vested right in the corpus of trust estate by the will of her mother and that the trustee has a mandatory duty to terminate the trust in whole or in part. On the contrary, they allege that plaintiff had been receiving an annual income of $18,000.00 a year from the trust; that she has no needs which would justify the trustee in invading the corpus under Item 6 of the will; and that any attempt on his part to do so would amount to an abuse of discretion.

When the case came on for trial the parties waived a jury trial. Judge Canaday found facts substantially as detailed above, and made the following conclusions of law: (1) Upon the death of Woodard, Jr., on 6 January 1959, a one-third undivided share of the trust estate vested in his three children, defendant appellants, "in fee simple," free and clear of trust. (2) Upon the death of testator's wife, an additional one-sixth interest in the estate vested in appellants in fee simple, free and clear of trust. At that time, plaintiff also became entitled to the income from one-half of the trust estate, which defendant trustee now holds for her use and benefit. (3) Defendant trustee has the authority, in his discretion, to terminate the trust and convey to plaintiff her one-half undivided share of the estate "in fee simple, free and clear of trust." (4) "It is the mandatory duty" of defendant trustee to terminate the trust as to the one-half undivided share of appellants Woodard and McDonald and to convey their share to them in fee simple, free and clear of trust.

After making the foregoing conclusions of law, the court ordered defendant trustee to convey to defendant appellants their one-half undivided interest in the trust property and decreed (1) that defendant trustee, in his discretion, had the authority to convey to plaintiff the other one-half interest in the trust property, free and clear of trust, and (2) that "upon conveyance of the aforesaid one-half undivided share to plaintiff," the trustee had "the power, authority and duty" to terminate the trust. From this judgment, the lineal descendants of Woodard, Jr., appealed.

Upon the oral argument, and in the brief of defendant trustee, it was disclosed that, on 31 October 1967, the trustee executed a deed conveying to plaintiff a one-half undivided interest in the corpus of the trust and a similar deed for the other one-half interest to appellants. He delivered these deeds to the Clerk of the Superior Court of Wake County to be held by him pending the outcome of this appeal.

*Boyce, Lake & Burns for plaintiff appellee.*

*William R. Hoke for John R. Jordan, Jr., trustee, defendant appellee.*

*Purrington, Joslin, Culbertson & Sedberry for Moses Woodard, III, Nancy Elizabeth Woodard and Mary White Woodard, additional defendant appellants.*

SHARP, J.

Appellants' assignments of error present these questions: (1) May plaintiff, over the objection of defendant appellants, require the trustee to convey to them their one-half undivided interest in the corpus of the trust created by the will of Moses W. Woodard, and to terminate the trust as to defendant appellants? (2) Does the trustee have absolute discretion under the will to terminate the trust during the lifetime of plaintiff by conveying to her a one-half interest in the corpus of the estate irrespective of whether such conveyance is "necessary or best for the welfare of the cestui que trust (plaintiff), and consistent with the welfare of . . . (the) family and estate" of the testator? The answer to these questions requires an interpretation of the will.

[1] In interpreting a will, the testator's intent is gathered from the entire instrument. Despite its circumlocution and apparently conflicting provisions — some of which seem to be the result of attempts at clarification —, when we consider the will of Moses W. Woodard from its four corners, his purpose emerges. The trustee was directed to provide for testator's wife during her widowhood and for his son and daughter during the lifetime of each. During the joint lives of the three, the trustees (or trustee) to whom his estate was committed were directed to divide its income into three equal parts, and to distribute it semi-annually to each. Upon the death of either the son or daughter leaving lineal descendants, his or her share immediately vested in that child's lineal descendants. Upon the death of the other without lineal descendants, his share vested in the lineal descendants of the other, and the trust ended.

**[2, 3]** The first of the three beneficiaries to die was Woodard, Jr. Upon his death on 6 January 1959, a one-third interest in the corpus of the trust vested in his lineal descendants, appellants, and the *testamentary* trust terminated as to that share. They then had the absolute right — had they desired to exercise it — to hold that share in severalty and to require a conveyance in fee simple from the trustee. In effect, they became tenants in common with the trustee and had the right to partition. However, so long as the trust continued as to either of the other beneficiaries, and no prejudice to them resulted, there was no legal impediment to an agreement between appellants and the trustee that he continue to administer their vested interest as if it were still a part of the entire trust corpus. After the death of Woodard, Jr., as to appellants' one-third part, the trustee acted as their appointed agent and not under the will. "Even though a trust is to terminate, by the terms of the will at a certain time, the beneficiaries may, by agreement, postpone its termination." 96 C.J.S. *Wills* § 1047, p. 673 (1957); Bogert, Trusts & Trustees § 1010 (1962).

Appellants' election to have the trustee continue to handle the property for them appears to have been the exercise of good business judgment and to have inured to the benefit of all the beneficiaries of the estate. Plaintiff, who cannot compel the trustee to exercise his discretionary powers under the will to terminate the trust and convey to her a share in the trust estate, has no legal right to require a division of the estate. *Woodard v. Mordecai*, 234 N.C. 463, 67 S.E. 2d 639. Thus — absent a showing of injury (which does not appear) — she has no standing to object to the arrangement between appellants and the trustee by which he continues to administer the property as a unit. The answer to the first question is No.

Upon the death of wife on 7 November 1960 all her rights in the trust estate terminated. She, therefore, had no interest in the estate which she could transfer by will. Thus, no part of testator's estate passed to plaintiff under the will of her mother. Thereafter, however, plaintiff was entitled to the income from one-half the estate, and appellants were entitled to a conveyance of their one-half interest in fee had they desired it.

Plaintiff is now 83 years old; she has no lineal descendants. Upon her death "without leaving any lineal descendants surviving her," the will provides that her interest in the trust estate will "cease and determine" and go as provided in the will "for the holding and disposing of the original shares" of testator's wife and son. The effect of that provision was that, after the death of Woodard, Jr., leaving lineal descendants, during the lifetime of testator's wife and daugh-

ter there remained three interests in the trust estate, two of which the trustee was *required* to administer. After the death of wife, the estate consisted of two shares. Upon the death of plaintiff, her share will also end and the entire trust estate will belong to appellants as the lineal descendants of Woodard, Jr. Testator decreed that the interest of each of the three original beneficiaries should terminate with his death and that the estate should ultimately vest in fee in the issue of son and/or daughter. It transpired that son had issue and daughter did not.

[4] Plaintiff may not, as a matter of right, require the trustee to convey to her, free of the trust, any part of the trust estate. However, since the day on which she became 21 years of age, the trustee has had the authority, if he deemed it "necessary or best for the welfare of the *cestui que trust* (plaintiff), and consistent with the welfare of testator's family and estate" to convey to plaintiff in fee simple, free from the trust, any part or all of the share of the *corpus* of the trust estate provided for her benefit. In 1951, she and her mother, who was then alive and unmarried, demanded that the trustees (W. G. Mordecai and First Citizens Bank and Trust Company) convey to each of them one-third of the trust corpus free from the trust. The corporate trustee was willing to make the conveyance; the individual trustee refused. Plaintiffs then instituted an action against the trustees to require them "to exercise a discretionary power granted by the will." They alleged that the conveyances which they had requested were "best for their welfare," and that the individual trustee, in refusing to exercise his discretionary power in their favor, had acted arbitrarily and with improper motives, to-wit, prejudice. At that time, plaintiff and her mother lived together "in a substantial dwelling" owned by plaintiff in Pinehurst, and the annual income of each from the trust estate had been $6,718.30. As a result of a new lease, however, in the immediate future it was to be at least $14,000.00 annually.

Upon a waiver of jury trial, Judge Bone found that the individual trustee had not abused his discretion or acted arbitrarily but, on the contrary, he had acted with discretion, reasonableness, and good judgment; that it was not then necessary nor best for the welfare of either plaintiff or her mother, nor consistent with the welfare of the family and the estate of the trustor, Moses W. Woodard, that a one-third part of the corpus of the trust estate be distributed to each of the plaintiffs; that the conclusion of the individual trustee that the trustees ought not to convey one-third of the trust corpus to each of the plaintiffs at that time was the correct one and consistent with the intentions of the trustor, Moses W. Woodard.

On appeal, this Court affirmed the judgment of Bone, J. It was noted, however, "that the judgment is not to be construed to preclude the trustees from exercising the discretionary power in the future if they jointly conclude that its exercise is 'necessary or best for the welfare of the *cestui que trust,* and consistent with the welfare of . . . (the) family and estate' of the testator." *Id.* at 474, 64 S.E. 2d at 646.

[4]     The final question presented is whether the trustee may, without any showing by plaintiff that "it is necessary or best" for her welfare and consistent with the welfare of the trust estate and testator's family, convey to her any part of the trust estate? In other words, may he make an arbitrary decision upon any ground which appeals to him, or must plaintiff show substantial economic need or circumstances indicating that her best interest require a conveyance before the trustee can invade the corpus in her behalf? We think it abundantly clear that testator did not intend to give his trustee the unbridled discretion to divide his estate in contravention of his testamentary plan or to invade the corpus in behalf of any beneficiary except in case of necessity or circumstances clearly denoting that such invasion was best for the beneficiary's personal welfare. The beneficiary's necessity or welfare does not include the personal satisfaction she might derive from owning the property in fee and being able to devise it to persons of her choice.

That testator did not contemplate an arbitrary division and termination of his trust estate in contravention of his plan for the ultimate distribution of his property is evidenced by the requirement of Item 6 of the will that any advancement "be counted in estimating the amount of the corpus of the estate for division and charged up to the share of the person so receiving the same and deducted from the payment on division to his or her lineal descendants; and in estimating the income for division, interest shall be counted on such advancement at the rate of 3% per annum and be charged up to the share of income of the person so advanced and be deducted from the payment of income to the party so advanced or to his or her lineal descendants." From this, it is apparent that testator contemplated only advancements and conveyances which were necessary to meet specific and reasonable requirements. The will does not authorize a conveyance for the mere purpose of terminating the trust or of making a division of the estate which — 53 years after testator's death — the trustee might think more equitable than the one testator had made.

Plaintiff, who has been receiving approximately $18,000 a year

from the trust estate, has made no contention that she is faced with any economic emergency which requires an invasion of the trust corpus. Should a genuine necessity arise, the trustee's discretionary power will be equal to the emergency. In the meantime, however, a termination of the trust by the conveyance to plaintiff of a one-half undivided interest in the trust estate — as presently contemplated by the trustee — would be an unreasonable departure from the terms of the trust.

In *In Re Murray,* 142 Me. 24, 45 A. 2d 636, the court construed a will which authorized trustees to pay from the principal of the estate "such sums as in their absolute discretion may be needed for the comfortable support and maintenance" of testator's widow. In surcharging the trustees, who had advanced sums of money to the widow upon her request when she had money on deposit in the bank, the court said: "The term 'discretion' has been defined as deliberate judgment, — the discernment of what is right and proper. It implies soundness of judgment — judgment directed by circumspection.

"\* \* \*

" 'If a trust is created for beneficiaries in succession, the Trustee is under a duty to the successive beneficiaries to act with due regard to their respective interests.' Restatement of Law of Trust, § 232, and note (b) thereunder; also section 183." *Id.* at 30-31, 45 A. 2d at 638-39.

In *Kemp v. Paterson,* 4 App. Div. 2d 153, 163 N.Y.S. 2d 245, *affirmed,* 6 N.Y. 2d 40, 188 N.Y.S. 2d 161, 159 N.E. 2d 661, the trust agreement authorized the trustee to pay to *B* all of the net income annually during the rest of her life and so much of the principal sums of this trust from time to time as the trustees may deem for the best interest of said *B.* Pursuant to this provision the trustees decided to distribute all of the principal of the trust to *B.* The remaindermen objected, and the court declined to permit the termination of the trust. The court said, "While undoubtedly, in a sense (the termination of the trust), will serve the beneficiary's 'best interest,' the latter words must be interpreted not in the broadest meaning but in a manner which is consistent with the trust deed. Her 'best interest' must be judged within the framework of the status bestowed upon her by the settlor, the status of a life beneficiary, not of a recipient of the entire trust *res.*

"In creating a trust, the settlor was not merely designating trustees as conduits through whom a gift could be made to the daughter whenever it would be to her advantage. The trust represented a plan of the settlor that included not only the beneficiary *(B),* but also

remaindermen. In adding a flexible provision for the invasion of principal for the 'best interest' of the beneficiary, the settlor was not injecting a facile means for destroying the trust." *Id.* at 156, 163 N.Y.S. 2d at 248.

[5]　A settlor's intention is always paramount to the wishes of a beneficiary and, unless his purpose is contrary to law or public policy, the courts will give it effect. *Trust Co. v. Taliaferro,* 246 N.C. 121, 97 S.E. 2d 776; 4 Strong, N. C. Index, Wills § 27 (1961).

The judgment of the court below is vacated, and the case is remanded to the Superior Court for the entry of judgment in accordance with this opinion.

Error and remanded.

LAKE, J., took no part in the decision or consideration of this case.