ESTATE OF BETTY DURHAM COUNCIL, DECEASED, FRANCES COUNCIL YEAGER, C. ROBERT YEAGER AND NORTH CAROLINA NATIONAL BANK, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8857-72.    Filed December 22, 1975.

*Leon L. Rice, Jr.,* and *Linwood L. Davis,* for the petitioner.
*Gary F. Walker,* for the respondent.

598

602

OPINION

The issue in this case is whether decedent possessed at her death a general power of appointment over the cash and stock which had been disbursed from the principal of the marital deduction trust some years prior to her death. If we determine that decedent did possess at her death a general power of appointment over the cash and stock, their date of death values are includable in decedent's gross estate under section 2041. Respondent has conceded that a credit should be allowed, under section 2012, for the Federal gift tax paid with respect to the prior transfer of the stock, if the value of the stock is includable in decedent's gross estate.

Insofar as relevant to the issue in this case, section 2041 provides:

SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—
* * *

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. * * *

Decedent was the primary beneficiary of the marital deduction trust established by her husband's will. She was granted under that trust the right to all the income during her life and the right by her last will and testament to exercise a general power of appointment over so much of the principal as remained in the hands of the trustees at her death. Council's will provided that his daughter and grandchildren would take the remainder in the marital deduction trust should decedent fail to exercise her testamentary power of appointment. Additionally, the trustees were authorized and empowered, in their sole discretion, to pay over to decedent during her life part or all of the principal of the marital deduction trust in the event that her income would not be sufficient to meet her reasonable needs in her station in life as to which the judgment of the trustees was to be conclusive. During decedent's life the following disbursements were made by the trustees from the principal of the marital deduction trust:

| Date | Description | Amount |
|---|---|---|
| June 23 and July 3, 1961 _____ | $94,000 cash paid to the decedent from the Estate of Commodore T. Council, charged as a disbursement from the principal of the marital deduction trust, less $3,000 cash received by the marital deduction trust on Apr. 3, 1962, and Nov. 26, 1962 | $91,000.00 |
| Dec. 18, 1962 _____ | 336 shares of common stock of B.C. Remedy Co. valued at $1,350 per share, being the value thereof as determined for gift tax purposes pursuant to the Federal gift tax return of the decedent for the taxable year 1962 and the examination thereof by respondent | 453,600.00 |

| | | |
|---|---|---|
| Apr. 11, 1963 _____ | Cash payment of gift taxes shown to be due on Federal and State gift tax returns of the decedent for the taxable year 1962; Federal tax, $81,590.76; North Carolina tax, $11,042.92 | 92,633.68 |
| Aug. 23, 1963 _____ | Cash payment for construction of a road on decedent's property in Hope Valley, Durham, N.C. | 8,729.38 |

The only power of appointment possessed by decedent at her death was that created by her husband's will over the principal of the marital deduction trust. On August 5, 1968, the date of decedent's death, the value of the assets comprising the principal of the marital deduction trust as reflected in the trustees' records was $1,176,624.85. In a timely filed Federal estate tax return petitioners included this amount in decedent's gross estate as being the value of all property with respect to which decedent had a power of appointment at her death. Respondent determined that at the time of her death decedent still possessed a general power of appointment over the economic worth of the cash and stock which had been disbursed from the principal of the marital deduction trust during decedent's life. Respondent accordingly asserted a deficiency in petitioner's estate tax resulting from the inclusion in the gross estate of the value of the cash and stock. The additional values included by respondent were:

| Description | Value included by respondent |
|---|---|
| (1) Cash disbursed from marital deduction trust principal in 1961 to decedent for the purpose of making a loan to her daughter; the loan being later canceled _____ | $91,000.00 |
| (2) 336 shares of B.C. Co. stock, disbursed from marital deduction trust to decedent, in 1962, and the subject of gifts by decedent to members of her family in 1967 _____ | 978,416.00 |
| (3) Cash disbursed from marital deduction trust principal in 1963 to pay Federal gift tax on gifts of B.C. Co. stock _____ | 92,633.68 |
| (4) Cash disbursed from marital deduction trust principal in 1963 to pay for construction of road through property which was given to members of decedent's family _____ | 8,729.38 |

Respondent concludes that these amounts are includable in decedent's gross estate solely on the ground that at decedent's death she possessed a power of appointment with respect to the economic worth of the cash and stock. Respondent does not contend that decedent at any time exercised or released her power of appointment by a disposition which was of such a nature that if it had been a transfer of property owned by decedent, such property would have been includable in the decedent's gross estate under sections 2035 to 2038, inclusive.

The parties agree that during decedent's life the cash and stock were "disbursed" from the marital deduction trust principal. Respondent maintains, however, that the disbursements were not effective "distributions" with the result that the economic worth of the cash and stock remained part of the trust principal and, therefore, subject to decedent's power of appointment at her death. In reaching this conclusion respondent relies on the provision in Council's will which granted the trustees the power to invade the trust principal in order to meet decedent's reasonable needs if her income from other sources was insufficient to meet those needs. Respondent asserts that as the disbursements were not made to meet decedent's reasonable needs the trustees were not acting within the scope of their authority to invade trust principal. In respondent's view the disbursements, not authorized by Council's will, were ineffective except to pass decedent's interest in the income. Respondent would characterize the disbursements as only an exercise of the trustees' power to place trust principal in the hands of third parties for investment purposes, leaving the cash and stock subject to decedent's power of appointment.

Petitioners, on the other hand, maintain that decedent's power of appointment over the cash and stock was extinguished when the trustees, in the exercise of their discretion and within the intent of Council's will, made the disbursements from the trust principal. Petitioners alternatively contend that decedent's power of appointment over the cash and stock was extinguished by an effective release of that power which occurred when decedent requested the distributions and joined with the takers in default of the exercise of her power in transferring the cash and stock to some or all of the takers in default.

Respondent's determination is presumptively correct; petitioners have the burden of proving that decedent did not have at

her death a power of appointment over the cash and stock here at issue. Rule 142(a), Tax Court Rules of Practice and Procedure.

Although for purposes of Federal taxation the classification of rights and powers is a matter of Federal law, the existence and nature of the interests to be classified is a matter of State law. *Helvering v. Stuart,* 317 U.S. 154 (1942); *Morgan v. Commissioner,* 309 U.S. 78 (1940); *Blair v. Commissioner,* 300 U.S. 5 (1937). We must determine under North Carolina law, therefore, whether decedent retained the power to appoint the cash and stock after they had been disbursed from trust principal.

In analyzing the parties' arguments, we begin with the observation that this Court is not faced with the question of whether a State court would determine in advance of the trustees' actions that the proposed distributions would fall within the intent of Council's will. The issue before this Court is whether the cash and stock disbursed from the trust principal during decedent's life remained subject to her power of appointment at her death. Decedent's power of appointment extended only to the assets remaining in the hands of the trustees at her death. In order to find that decedent had the power to appoint the cash and stock, here in issue, we must find that a State court would determine after the fact that the distributions were ineffective to remove the cash and stock from the trust principal.

Respondent asserts that a North Carolina court would invalidate the distributions because they were not made within the intent of the testator as expressed in his will. In North Carolina a testator's intent is to be ascertained from the actual words used in the will. *Wachovia Bank & Trust Co. v. Green,* 239 N.C. 612, 80 S.E. 2d 771 (1954). As an aid in construction, a will may be considered in light of the conditions and circumstances existing at the time the will was executed. *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17 (1945); *Heyer v. Bulluck,* 210 N.C. 321, 186 S.E. 356 (1936). The circumstances which may be considered are the relationships between the testator and the beneficiaries named in the will and the condition, nature, and extent of the testator's property. *Hubbard v. Wiggins,* 240 N.C. 197, 81 S.E. 2d 630 (1954); *Heyer v. Bulluck, supra.* Parol evidence of a testator's declarations made before, after, or at the time the will was executed is not competent, however, as an aid in the construction of a will. *Wachovia Bank & Trust Co. v. Wolfe,* 245 N.C. 535, 96 S.E. 2d 690 (1957); *Raines v. Osborne,* 184 N.C.

599, 114 S.E. 849 (1922). Pursuant to these rules, only the actual words used in Council's will together with the factual circumstances surrounding him at the time he executed it may be considered in ascertaining his intent.

At the time he executed his will Council was a millionaire. He and his wife were accustomed to the possession and use of wealth and to a standard of living which reflected that wealth. They had a practice of making substantial gifts to their children and grandchildren. Decedent received income from property in her own name. Considering Council's will in its entirety it is evident that he intended for his wife to be the primary beneficiary of his estate so long as she was alive. Except for the $1,000 per month payment to Council's daughter-in-law, decedent was to receive all the income from both trusts. If the income from all sources available to decedent was insufficient to meet her reasonable needs in her station in life, the trustees were given the authority and power to use so much of the principal of the marital deduction trust as they in their discretion deemed requisite or desirable to meet those needs. Council's will provided for payments to other members of his family only after decedent's death.

Considering the words used in Council's will, together with the factual circumstances surrounding him at the time the will was executed, we are unable to conclude that a State court would have approved the distributions had it been asked to do so in advance. It is not clear, to the point of certainty, that the distributions fall within the testator's intent. As indicated previously, however, a conclusion on this point is not necessary for the resolution of the issue presented here. The distributions were in fact made and we believe that a North Carolina court would view the question after the fact in a different light.

Faced with the question of whether these distributions were effective to remove the cash and stock from the trust principal, the State court would have to balance its interpretation of the testator's intent against the fact that the testator gave his trustees sole discretion to interpret his will and to determine when distributions should be made. Generally, the North Carolina courts will not undertake to control the exercise of a trustee's discretionary power absent an abuse of discretion. *Woodard v. Mordecai,* 234 N.C. 463, 67 S.E. 2d 639 (1951). The Supreme Court of North Carolina reviewed the nature of

trustees' powers and the circumstances under which the courts should undertake to control those powers in *Woodard v. Mordecai, supra* at 644:

The powers of a trustee are either mandatory or discretionary. A power is mandatory when it authorizes and commands the trustee to perform some positive act. Brummett v. Hewes, 311 Mass. 142, 40 N.E. 2d 251; In re Carr's Estate, 176 Misc. 571, 28 N.Y.S. 2d 12, 15. A power is discretionary when the trustee may either exercise it or refrain from exercising it, Welch v. Wachovia Bank & Trust Co., 226 N.C. 357, 38 S.E. 2d 197, Bennett v. Norton, 171 Pa. 221, 32 A. 1112; or when the time, or manner, or extent of its exercise is left to his discretion. Doe ex dem. Gosson v. Ladd, 77 Ala. 223; City of San Antonio v. Zogheib, Tex. Civ. App., 70 S.W. 2d 333.

The court will always compel the trustee to exercise a mandatory power. Albright v. Albright, 91 N.C. 220. It is otherwise, however, with respect to a discretionary power. The court will not undertake to control the trustee with respect to the exercise of a discretionary power, except to prevent an abuse by him of his discretion. The trustee abuses his discretion in exercising or failing to exercise a discretionary power if he acts dishonestly, or if he acts with an improper even though not a dishonest motive, or if he fails to use his judgment, or if he acts beyond the bounds of a reasonable judgment. The American Law Institute's Restatement of the Law of Trusts, section 187; Carter v. Young, 193 N.C. 678, 137 S.E. 875; 65 C.J., Trusts, § 539.

The trustees' power to use the principal of the marital deduction trust to meet decedent's reasonable needs falls within North Carolina's definition of discretionary powers. Under Council's will, the power could either be exercised or not exercised, and the time, manner, and extent of its exercise was left to the trustees' discretion. The power could not be exercised without the application of a certain degree of prudence and judgment. *Welch v. Wachovia Bank & Trust Co.,* 226 N.C. 357, 38 S.E. 2d 197 (1946). The will gave the trustees the discretionary power not only to invade trust principal, but also the discretionary power to determine what were decedent's reasonable needs and to determine whether her income from all sources was sufficient to meet those needs. The trustees have exercised their discretion and made distributions pursuant to their discretionary powers. As a North Carolina court would not reverse the trustees' actions, absent an abuse of discretion, we must determine whether the trustees abused their discretion.

An abuse of discretion occurs when the trustees act with improper motives, or fail to use judgment, or act beyond the bounds of reasonable judgment. *Woodard v. Mordecai, supra.* Also recognized as an abuse of discretion are actions by the

trustees which are clearly contrary to the testator's intent. *Greer v. United States,* 448 F. 2d 937 (4th Cir. 1971); *Campbell v. Jordan,* 274 N.C. 233, 162 S.E. 2d 545 (1968).

There has been no suggestion that the trustees acted with improper motives or that they failed to exercise their judgment. We do not believe that the trustees' decisions went beyond the bounds of reasonable judgment. The trustees' decisions to make the various distributions were not arbitrary or capricious. They sought the legal advice of the attorney who drafted Council's will. They took into consideration the effect the distributions would have on the amount of income available to decedent. They determined that the distributions would not have an adverse effect upon those who would take in default of the exercise of decedent's power of appointment. Finally, the trustees took into consideration their own understanding of Council's intentions with regard to the administration of his estate. In good faith the trustees believed that their role with respect to the principal of the marital deduction trust was to protect decedent from unreasonable demands that might be made upon her by members of her family. The trustees believed that Council intended that decedent be able to assist various members of her family through the use of the marital deduction trust principal, so long as the decedent's interests were protected. Concluding that decedent's "reasonable needs in her station in life" included her desire to help members of her family, the trustees felt that the distributions would be within the intent of Council's will. The trustees' understanding of Council's will may have differed from what a State court would have advised them to be Council's intent. We do not believe, however, that the trustees' interpretation and their actions based on that interpretation went beyond the bounds of reasonable judgment.

Nor do we believe that the trustees' actions were clearly contrary to the testator's intent. In *Campbell v. Jordan, supra,* the North Carolina Supreme Court determined that an invasion of corpus for the benefit of an income beneficiary would be an unreasonable departure from the terms of the trust. The trust instrument in Campbell provided that the testator's wife and children were to be income beneficiaries, and the remainder was to pass to his grandchildren. The trustees were authorized, however, (if they in their judgment deemed it necessary or best for the welfare of the cestui que trust and consistent with the

welfare of the testator's family and estate) to convey part of the principal to the income beneficiaries. The testator's daughter requested that the principal generating her share of the income be distributed to her outright. The court held that a distribution could not be made absent a showing of substantial economic need or circumstances indicating that the income beneficiaries' best interest required a conveyance of principal. The question of whether or not a distribution would go beyond the reasonable bounds of judgment in that case differs, however, from the situation here at issue. In *Campbell v. Jordan, supra,* the trust instrument provided for definite remaindermen who would take the principal on the death of the income beneficiary. The trustees were, therefore, charged with the responsibility of protecting the interests of all beneficiaries. The court cited the Restatement of Law on Trusts, section 232 and note "b" thereunder, to the effect that, "If a trust is created for beneficiaries in succession, the Trustee is under a duty to the successive beneficiaries to act with due regard to their respective interests."

The situation here is distinguishable from that in *Campbell* in the following respects. First, under Council's will the remaindermen had only a contingent interest subject to the non-exercise of decedent's power of appointment. As the decedent had the power to appoint trust principal to anyone she chose, the trustees had no obligation to any beneficiary other than decedent. Secondly, the distributions made here ultimately inured to the benefit of the remaindermen. Under these circumstances, we believe the trustees acted with due regard to the interests of all possible beneficiaries who were specifically named in Council's will. We see no material frustration of the testator's intent.

In conclusion, we find the power of the trustees to invade principal of the marital deduction trust was a discretionary power. The trustees acted within the bounds of reasonable judgment in exercising their discretion and making the distributions. The trustees' acts would not be reversed by a North Carolina court. The distributions, therefore, effectually removed the cash and stock from the principal of the marital deduction trust. Decedent's power of appointment extended only over so much of the principal as remained in the marital deduction trust at her death. The cash and stock were not part of the principal at her death and were not subject to her power of appointment. The

value of the cash and stock is not, therefore, includable in her gross estate.

Being able to find favorably for petitioner on these grounds, we do not reach the issue of whether decedent released her power of appointment over the cash and stock.

In order to reflect concessions on other issues,

*Decision will be entered under Rule 155.*