ESTATE OF MIRIAM H. HARTZELL, DECEASED, GEORGE WILLIAM HARTZELL, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Hartzell v. Commissioner
Docket No. 27300-92
United States Tax Court
T.C. Memo 1994-576; 1994 Tax Ct. Memo LEXIS 584; 68 T.C.M. (CCH) 1243; November 23, 1994, Filed *584 Decision will be entered under Rule 155. For petitioner: Wiley Dinsmore. For respondent: Sherri L. Feuer and James D. Hill. FAY
FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined a deficiency in estate tax due from petitioner in the amount of $ 5,424,893. After concessions by the parties, [1] the sole issue for decision, simply stated, is whether the date of death value of certain assets distributed from a marital trust to Miriam H. Hartzell during her lifetime, and subsequently given to her family, should be included in her gross estate under section 2041. [2] We hold that it should not be so included. *585 A stipulation of facts, with attached joint exhibits, was filed by the parties. By this reference those facts are so found and incorporated herein. Factual Background
Petitioner is the Estate of Miriam H. Hartzell. Miriam H. Hartzell (decedent) died on March 1, 1989, a resident of Miami County, Ohio. George William Hartzell, decedent's son and the executor of the Estate of Miriam H. Hartzell, resided in Huntsville, Ohio, at the time the petition was filed. On December 4, 1989, petitioner filed a Form 706, U.S. Estate Tax Return. Robert N. Hartzell, decedent's husband, died on December 11, 1968, appointing decedent the executrix of his estate. On March 10, 1969, decedent, as executrix, timely filed a Form 706, U.S. Estate Tax Return, for the Estate of Robert N. Hartzell, deceased. On December 1, 1971, the Commissioner issued an estate tax closing letter for the Robert N. Hartzell Estate. Mr. Hartzell's will (the will) was admitted to probate by the Probate Court of Miami County, Ohio. The will created a Trust (Trust A) in "ITEM TENTH", providing in pertinent part as follows: TRUST A: If my wife, Miriam H. Hartzell, survives me * * *, I give, devise and bequeath *586 to my Trustees hereinafter named, to set apart as a separate TRUST A, that fractional share of my residuary estate which will equal the maximum Federal Estate Tax marital deduction (allowable in determining the federal estate tax on my gross estate for federal estate tax purposes) diminished by the value for federal estate tax purposes of all other items in my said gross estate which qualify for said deduction and which pass or have passed to my wife under other provisions of this Will or otherwise. In making the computations necessary to determine such fractional share, the final determinations in the federal estate tax proceedings shall control. My Executrix shall allocate to such fractional share, such property in cash or in kind as she, in her sole discretion, may determine; provided, however, that only property which is included in my gross estate for the federal estate tax and which qualifies for said marital deduction shall be allocated thereto. (1) My Trustees shall pay all the net income from Trust A to my wife, Miriam H. Hartzell, during her lifetime, in monthly or quarter-annual installments, as she shall indicate. In addition thereto, the Trustees are given the right, *587 in their sole and absolute discretion, to use the principal of Trust A or any part thereof, even to the exhaustion thereof, for the comfort, maintenance, support and general well being of said Miriam H. Hartzell, or to continue the standard of living to which she is accustomed, or to aid her in the event of any accident, injury, illness or other emergency affecting her. [Emphasis added.] (2) Upon the death of said Miriam H. Hartzell, my Trustees shall pay the then remaining principal of Trust A, and any accrued income thereon, to such persons, association or corporations, including the Estate of said Miriam H. Hartzell, or any charitable institution that she, Miriam H. Hartzell, shall by her Last Will and Testament, appoint, by specific reference to this provision. (3) In default of the effective exercise of the general power of appointment herein conferred upon Miriam H. Hartzell, or upon my death if Miriam H. Hartzell predeceases me, my Trustees shall pay out of the unappointed principal of Trust A, the federal estate tax on the estate of Miriam H. Hartzell, (if she survives me) and add the then remaining principal of Trust A, and any accrued income thereon, to Trust C, as *588 hereinafter created and shall hold and distribute the same for all the uses and purposes and subject to the terms and conditions as therein set forth. (4) No provision in this instrument shall be deemed to require or authorize the Trustee to make any charge to income or allocation of principal which would cause my wife, Miriam H. Hartzell, to receive, in any year, less than all the income under any applicable federal or state statute or rule of law defining income for such marital trusts.
Decedent and the Piqua National Bank & Trust Co. were appointed trustees of the trusts created in the will. Decedent was the primary beneficiary of Trust A established by her husband's will. As is apparent from the language establishing Trust A, decedent was granted the right to all the income from Trust A, and all the principal to the exhaustion thereof, as well as the right to exercise a general power of appointment over the principal remaining in the trust at her death. Decedent, in the 12 years immediately preceding her husband's death, became accustomed, as an integral part of her standard of living, to making sizable gifts to family members, such gifts, attributable to her, totaling *589 in excess of $ 484,000 for these years. [3] Mr. Hartzell gave a similar amount to family members during those years as well. Except for the 1961 taxable year, [4] decedent filed a Form 709, U.S. Gift Tax Return, for every taxable year from 1956 through 1968 reporting gifts made by her, or her and her husband, during those years. Despite her husband's death in December 1968, decedent, in continuance of the practice to which she had become accustomed, and in accordance with her established standard of living and station in the family, continued making sizable gifts to her family members. On April 15, 1970, decedent filed a U.S. Gift Tax Return for the 1969 calendar year reporting $ 65,888 in gifts made from her own holdings of the closely held stock of the Hartzell family businesses. On April *590 15, 1971, decedent filed a U.S. Gift Tax Return reporting $ 1,036,177.80 in gifts made from her own property. In April 1972, decedent filed a U.S. Quarterly Gift Tax Return for the 1971 calendar year reporting $ 68,100 in gifts made from her own property. We conclude, in light of the record herein, that decedent made these gifts, after being professionally advised, with the intent of ensuring that control over the Hartzell family businesses would remain within the family. Decedent, on December 22, 1972, created an irrevocable living trust agreement (the irrevocable trust) naming her son, George William Hartzell, and the Piqua National Bank and Trust Co. as trustees. At the time of decedent's husband's death in 1968, decedent personally owned, inter alia, 3,420 shares of class A nonvoting stock of Hartzell Industries, Inc., 340 shares of voting stock in the same company, and 8 shares of Castle Hills Corp. During the period after decedent's husband's death and prior to December 23, 1972, decedent transferred the voting and nonvoting Hartzell Industries, Inc. stock that she owned to her children, their spouses, and her grandchildren, and transferred the 8 shares of Castle Hills *591 Corp. to the irrevocable trust. Decedent's four children were the beneficiaries of the irrevocable trust, the beneficiaries of Trust C established in her husband's will, and thus the takers in default with respect to the property remaining in Trust A if decedent did not utilize the power of appointment contained in Trust A. The stock transfer records of the closely held Hartzell companies reflect that, on December 22, 1972, the trustees of Trust A transferred several blocks of different Hartzell companies' stock to decedent, as follows: 2,600 shares, Hartzell Industries, Inc., Voting 1,860 shares, Hartzell Industries, Inc., Nonvoting 1,415 shares, Hartzell Propeller, Inc., Class B Voting 2,795 shares, Hartzell Propeller, Inc., Class A Nonvoting 104 shares, Castle Hills Corporation, Capital 600 shares, Hartzell Hardwoods, Inc., Class A Voting After decedent received the above-mentioned block of various stocks, she, as was her right, transferred the entire block and, as previously mentioned, the 8 shares of Castle Hills Corp. voting stock that she owned, to the irrevocable trust. Decedent thereafter timely filed a Form 709, U.S. Quarterly Gift Tax Return for the calendar quarter *592 ending December 31, 1972, reporting, inter alia, the transfer to the irrevocable trust as a gift, and paying $ 1,011,357.29 in gift tax with such return. From December 1972 through the 1988 calendar year, the trustees of Trust A transferred additional shares of stock in the closely held Hartzell family businesses to decedent. Decedent, from January 1973 through 1988, would subsequently give these shares in the Hartzell family businesses to her children, their spouses, and her grandchildren. The value, as of decedent's date of death, of the shares decedent gave to her family during those years was $ 629,981. Robert Strempel, C.P.A., advised both Mr. Hartzell and decedent, until their respective deaths, on individual financial matters and matters concerning the Hartzell family businesses beginning in 1955. We find that Mr. Strempel advised decedent to give the shares in the closely held Hartzell family businesses to family members in order to keep control within the family. He also advised decedent never to give away any marketable stock or bonds because these investments would ensure decedent the lifestyle to which she was accustomed. With respect to the irrevocable trust created *593 by decedent in December 1972, the only distributions ever made were of trust income. As of the date of decedent's death, the total value of the principal in the irrevocable trust was $ 11,907,398.27. Of this amount, $ 371.52 is related to the 8 shares of Castle Hills Corp. stock which decedent owned in her own name before those shares were transferred to the irrevocable trust. Discussion
Respondent argues that decedent's gross estate should be increased under section 2041 by the fair market value of the stock which was part of the marital trust, Trust A, established for the benefit of decedent, over which decedent held a testamentary power of appointment, and which property, respondent asserts, was improperly transferred by the trustees to third parties prior to the death of decedent. [5] Respondent also argues: Because the trustees of the marital trust at issue caused the stock to be transferred to various third parties in contravention of the trust grantor's express intent, it is respondent's position that an Ohio court, applying Ohio law, would conclude after the fact that the trustees exceeded their authority, failed to exercise sound discretion, and acted in a plainly *594 unreasonable manner, and consequently, that the court would intervene to set the transfer aside at the behest of an interested party. * * *
Petitioner, in essence, argues that the trustees, in making the transfers that respondent complains of, acted within their discretion and the testator's intent, and that an Ohio court applying Ohio law would agree with this contention. This being the case, petitioner asserts that the distributions to decedent, in fact, effectively removed the property from Trust A, and, therefore, the value of such property is not includable in decedent's gross estate. We agree with petitioner. We find, after review of Ohio State law, and the record taken as a whole, that respondent's position, as articulated above, is without merit. *595 We find, as discussed below, that an Ohio court applying Ohio law would conclude that the trustees acted within their discretion and that the transfers respondent complains of would not be set aside. Petitioner relies heavily on Estate of Council v. Commissioner, 65 T.C. 594 (1975), wherein the Court held, in a factual situation similar to the instant case, that the trustees did not abuse their discretion under North Carolina law, nor were the trustees' actions clearly contrary to the testator's intent; therefore, the value of the property was not includable in the taxpayer's gross estate under section 2041. Id. at 610-611. We agree with petitioner that Estate of Council is instructive in the instant case and proceed to analyze this matter in a similar fashion. Respondent's determination is presumptively correct; petitioner has the burden of proving that decedent did not, at her death, have a power of appointment over the property here at issue. Rule 142(a). Although, for purposes of Federal taxation, the classification of rights and powers is a matter of Federal law, the existence and nature of the interests *596 to be classified is a matter of State law. Helvering v. Stuart, 317 U.S. 154 (1942); Estate of Council v. Commissioner, supra at 607. We must determine, therefore, whether, under Ohio law, decedent retained the power to appoint the stock after it had been disbursed from trust principal. Estate of Council v. Commissioner, supra at 607. The Court is persuaded that the issue involved in Estate of Council is similar to that which must be decided in the instant case, namely, whether the property disbursed from the Trust A principal during decedent's life remained subject to her power of appointment, as provided in her husband's will, at her death. Decedent's power of appointment extended only to the assets remaining in the hands of the trustees at her death. The parties, as indicated in their briefs, agree that this Court is not faced with the question of whether an Ohio court would determine in advance of the trustees' actions that the proposed distribution would fall within the intent of Robert N. Hartzell's will. Therefore, in order to find that decedent had the power to appoint *597 the property here in issue, we must find that an Ohio court would determine after the fact that the distributions were ineffective to remove the property from the trust principal. In Ohio, for purposes of will construction, the sole purpose of the court should be to ascertain and carry out the intention of the testator. Stevens v. National City Bank, 45 Ohio St. 3d 276, 279, 544 N.E.2d 612, 615 (1989) (quoting Townsend's Executors v. Townsend, 25 Ohio St. 477, 487-488 (1874)). Such intention must be ascertained in the first instance from the words contained in the will. Id. The words contained in the will, if technical, must be taken in their technical sense and, if not technical, in their ordinary sense, unless it appears from the context that they were used by the testator in some secondary sense. Id. All the parts of the will must be construed together and effect, if possible, given to every word contained in it. Id. Furthermore, a will is to be construed in the light afforded by the circumstances under which it was made and the subjects to which it relates. Thompson v. Thompson, 4 Ohio St. 333, 351 (1854), *598 cited by Stevens v. National City Bank, supra at 279. As indicated in Estate of Council, a conclusion as to whether a Ohio court would have approved the distribution had it been asked to so do in advance is not necessary for the resolution of the issue presented here. The distribution was in fact made, and an Ohio court would analyze the validity of the distribution after the fact. Estate of Council v. Commissioner, supra at 608. Faced with the question of whether the distribution was effective to remove the property from the trust principal, the State court would have to balance its interpretation of the testator's intent against the fact that the testator gave his trustees sole discretion to interpret his will and to determine when a distribution should be made. Id.
With respect to the trustees, the extent of their duties and powers are to be determined from the four corners of the will. Stevens v. National City Bank, supra at 616. As a general matter, a trustee is required to exercise the same care, skill and diligence that an ordinarily prudent person would exercise over *599 his own affairs and property. Id. Most important, however, is that So long as a trustee acts in good faith and within the limits of sound execution of the trust vested in him, a court of equity will not undertake to substitute its discretion for that of the trustee, or interfere with that discretion. * * * And, when a settlor reposes his discretion in a trustee, he does so because he desires the honest judgment of the trustee, perhaps even to the exclusion of that of the court. [Citations omitted.]
Hopkins v. Cleveland Trust Co., 163 Ohio St. 539, 548-549 (1955), quoted in part in Stevens v. National City Bank, supra at 279. Furthermore, an Ohio court will not interfere, so long as the trustees do not act in bad faith, abuse their discretion, or act in a manner inconsistent with the purpose for which the trust was created. Sherman v. Sherman, 5 Ohio St. 2d 27, 36, 213 N.E.2d 360, 366 (1966). Respondent attempts, inter alia, to characterize the events in question as an improper distribution to a third party. This is clearly not the case. *600 Similarly, the cases cited by respondent, upon careful review, are distinguishable. In addition, we have considered respondent's other arguments; however, as indicated previously, we disagree with respondent and find for petitioner in this matter. There has been no suggestion that the trustees acted with improper motives or in bad faith. We do not believe that the trustees' decision went beyond the bounds of reasonable judgment. The trustees' decision to make the distribution, similarly, was not arbitrary and capricious. The trustees were advised by an able and experienced financial adviser. It is clear that the effect of the distribution on the amount of income available to decedent was considered. Similarly, reasonable inference from the record, along with the record itself, allows the Court to conclude that the distribution would not have an adverse effect upon those who would take in default of the exercise of decedent's power of appointment. The beneficiaries of the irrevocable trust that received the property were the same parties who would take in default of the exercise of decedent's power of appointment, as well as being the same parties who directly received gifts *601 of the stock from decedent during the years subsequent to Mr. Hartzell's death. Finally, the trustees took into consideration their own understanding of Mr. Hartzell's intentions with regard to the administration of his estate. Because of, among other reasons, the custom that had been established prior to Mr. Hartzell's death of making substantial gifts to the family, the trustees believed in good faith that Mr. Hartzell intended that decedent be able to continue what she had been accustomed to through the use of the trust principal, so long as decedent's interests were protected. The trustees reasonably concluded that the language granting them the right, in their sole and absolute discretion, to use the principal of Trust A or any part thereof, even to the exhaustion thereof, for the comfort, maintenance, support and general well being of said Miriam H. Hartzell, or to continue the standard of living to which she is accustomed, * * *
would include, in furtherance of the testator's intent, assisting decedent in accomplishing her desire to continue making gifts to the family and thereby assure continued family control over the family businesses. We do not believe that *602 the trustees' interpretation of the will and their actions based on that interpretation went beyond the bounds of reasonable judgment. We find that the power of the trustees to invade the principal of Trust A was a discretionary power. The trustees acted within the bounds of reasonable judgment in exercising their discretion and making the distributions. We believe that the trustees' acts would be upheld by an Ohio court. The distribution, therefore, was effective in removing the property from the principal of Trust A. Decedent's power of appointment extended only over so much of the principal as remained in Trust A at her death. The property involved in the instant matter was not a part of the principal of Trust A at decedent's death and was not subject to her power of appointment. The value of the property is not, therefore, includable in decedent's gross estate. In order to reflect concessions on other issues, Decision will be entered under Rule 155. Footnotes
1. Petitioner concedes that the gross estate as reported on Form 706, U.S. Estate Tax Return, for the Estate of Miriam H. Hartzell should be increased by the sum of $ 4,597. Respondent concedes that the fixed deductions as reported on Form 706 for the Estate of Miriam H. Hartzell should be increased by the sum of $ 23,771.↩
2. All section references are to the Internal Revenue Code in effect at the time of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. Of this amount, approximately $ 387,961 was given in the taxable years from 1965 through 1968.↩
4. The record is unclear as to whether any gifts were given in 1961 which would have warranted the filing of a gift tax return.↩
5. Respondent characterizes the transfers of stock from Trust A to decedent, and her subsequent gifts of the stock to the irrevocable trust and other beneficiaries, as improper transfers from Trust A to third parties. This characterization is without merit.↩