ESTATE OF STANLEY M. CARPENTER, DECEASED, WILLIAM R. THOMAS, ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Carpenter v. Commissioner
Docket No. 13227-91
United States Tax Court
T.C. Memo 1994-108; 1994 Tax Ct. Memo LEXIS 109; 67 T.C.M. (CCH) 2400; March 17, 1994, Filed *109 For petitioner: A. Vann Irvin and M. LeAnn Nease. For respondent: Ross A. Rowley. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $ 135,250. After concessions, the sole issue to be decided is whether petitioner is entitled to a marital deduction under section 2056 with respect to certain property which under decedent's will was to be placed in trust for the benefit of the surviving spouse during her lifetime, but was instead transferred outright by petitioner to the surviving spouse pursuant to an agreement entered into by the surviving spouse and the other beneficiary under the trust. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts and certain documents have been stipulated for trial pursuant to Rule 91 and are found accordingly. We incorporate the parties' stipulations in this Opinion by reference, irrespective of any restatement below. Petitioner is the Estate of Stanley M. Carpenter, *110 William R. Thomas, Administrator. William R. Thomas is the duly appointed administrator of the Estate of Stanley M. Carpenter. At the time petitioner's petition was filed, William R. Thomas resided in Bahama, North Carolina. On October 2, 1987, Stanley M. Carpenter (decedent) died. Decedent was survived by his spouse Ernestine Carpenter and his daughter Nancy Carpenter Reid. Ernestine Carpenter was decedent's fourth wife. Nancy Carpenter Reid was decedent's only child and was the daughter of decedent and decedent's first wife. Sometime prior to her marriage with decedent, Ernestine Carpenter had been previously married. William R. Thomas (the Estate's administrator) is the son of Ernestine Carpenter and her prior husband. Decedent completed college and attended one year of law school, but had not finished his law school education. Many years prior to decedent's death, he and other members of his family had started Carpenter's, Inc., one of the first General Motors car dealerships in North Carolina and the country. At the time of his death, decedent owned shares of stock in Carpenter's, Inc., but was engaged in a dispute with certain of the other shareholders over the dealership's *111 operation and decedent's share of its profits. Decedent also owned various real properties and other assets. Decedent's last will consisted of a holographic will which he executed on May 5, 1981, and a codicil which he executed on December 17, 1986. In his last will, decedent left to his daughter Nancy Carpenter Reid $ 50,000 cash, two undeveloped beach lots, and a house and lot. He left to his wife Ernestine Carpenter all of his "personal cars, trucks, tractors, mowers, farm equipment, guns and everything I own at the farm." Decedent's will further provided that certain other specified assets were to be placed in a trust for the benefit of his wife. Prior to their amendment by the codicil executed on December 17, 1986, the will provisions concerning the trust were as follows: 3. I hereby wish to have all my real estate including my farm, a lot in Beaufort, land in Orange, Durham and Granville Counties to be put in Trust for my wife Ernestine. My wife is to select the Trust Dept. She is also to take an equal part as an executor with the Trust in all decisions regarding this Trust. * * * I chose to use a Trust so that no one can dominate or take advantage of her *112 for her entire life. I want the Trust together with my wife to sell the land in Granville County and Orange County after five years of my death and not later than 10 years to the highest bidder or to work with a developer to obtain the best returns. I love my wife dearly and she has given me the best years of my life and I am concerned that people may try to influence her if she should be depressed or ill. The Trust working with my wife may sell any property at anytime if necessary for cash for the Trust in case my wife wants cash for her personal health, needs, trips or anything relating to my wife. My wife may live at the farm for her life if she chooses and the Trust is to keep up and pay all expenses necessary including Taxes, insurance, etc. I hope that she will eventually leave the farm and enjoy life while she lives and not try to save money to be left behind. I have worked hard all my life and deprived myself of trips, clothes, new tractor, etc. in order that she could have a good life and I don't want her to deprive herself of anything in order to save for some one else after the hard life I have had trying to prevent my relatives from stealing my share of *113 income from Carpenter's, Inc., a firm of which I was one of the original incorporators and helped to build up. As stated, this Trust is to protect my wife only. I hope that she will use it wisely for her happiness. 4. If my wife should decide to move from the farm and same is sold to the highest bidder, the proceeds are to go into the Trust Fund and after two years 1/2 (one half) of proceeds from the sale are to be given to my wife personally. 5. If the Trust cannot accept the terms of this will, my wife is to select another company or my wife may change from one Trust to another. 6. Since I am leaving practically all of my life's assets for my wife's benefit while she lives, I think, and want anything left in the Trust to go to my daughter Nancy. Since my wife has valuable stocks and accounts of her own that she has accumulated in her life, I feel no obligation to leave anything to my wife's son, who lives good and better than I ever had a chance to do at his age. * * * * * * Only my wife and daughter are to benefit from my life's work. * * * 8. When Carpenter's stock I own is sold I want same to go into the Trust after the provisions of Item 2 [concerning *114 the specific bequests of cash and real property to decedent's daughter] are met if same cannot be met at my death. Any proceeds from the litigation are to go into the Trust also.
In the codicil executed on December 17, 1986, decedent amended his prior will so that his farm would be left to his wife outright rather than being placed in the trust. The other provisions of the will remained unchanged. Decedent's last will contained no residuary clause and failed to provide for the disposition of various other assets which decedent owned at his death. As a result, decedent died interstate as to such property. Following decedent's death on October 2, 1987, decedent's surviving spouse Ernestine Carpenter and his daughter Nancy Carpenter Reid were apprised of the provisions of decedent's will. Initially, neither Mrs. Carpenter nor Mrs. Reid desired to serve as the administrator of decedent's estate. Mrs. Carpenter's son, William R. Thomas, offered to serve as the administrator. Mr. Thomas is a policeman and had prior experience administering the estate of another relative of his. Mrs. Reid's husband, Marland Reid, is an attorney. Mr. Reid offered to have a paralegal at his *115 law firm who performed estate work assist Mr. Thomas. Mrs. Carpenter and Mrs. Reid agreed to have Mr. Thomas appointed as the administrator of decedent's estate. Subsequently, Mr. Thomas consulted with and retained A. Vann Irvin, petitioner's counsel in the instant case, in connection with the administration of the estate. Upon examining decedent's will, Mr. Irvin became concerned with how the will provisions establishing the trust should be interpreted. He believed that a potential conflict of interest might exist between decedent's wife, Ernestine Carpenter, as the life beneficiary and the daughter, Nancy Carpenter Reid, as the remainderman, because the will provided no specific instructions as to how the trust's income and principal should be divided and appeared to provide little limitation on the wife's power to have the property sold and the sales proceeds expended for her own personal purposes. Mr. Irvin provided copies of the will to two individuals he was acquainted with, each of whom was employed in the trust department of a North Carolina bank. He related his concerns to them and asked them how their respective bank's trust department would interpret the trust provisions. *116 He also inquired whether their respective banks would be interested in serving as the trustee. These individuals informed Mr. Irvin that their respective banks would not be willing to serve as the trustee, unless the specific rights of the wife and daughter under the trust were clarified. They indicated that this could be accomplished either through the wife and daughter's concluding an agreement as to what their respective rights would be or through instituting a declaratory judgment action. By letter dated January 25, 1988, Mr. Irvin advised Nancy Carpenter Reid and her husband of the potential conflict that might exist between Mrs. Reid and Ernestine Carpenter due to the will's provisions. He also advised them of the discussions he had with the two bank trust officers regarding the trust. In his letter, Mr. Irvin asked them to consider the possibility of reaching an agreement under which the trust would not be established and where Mrs. Carpenter and Mrs. Reid would instead receive outright the property which would have gone into the trust. Mr. Irvin's proposal to Mr. and Mrs. Reid was as follows: Given the maturity of the two beneficiaries and the likely high costs of *117 administering this trust, it appeared to me that the trust probably was not as good an idea as [decedent] * * * had thought. I raised with Bill the possibility of terminating the trust and distributing assets outright to each beneficiary at this point. Bill authorized me to research the issue. I have taken a quick look at North Carolina law on the subject and it appears to me that if Mrs. Carpenter and Mrs. Reid agree, the trust can be terminated through a special proceeding. I have enclosed four schedules showing the various properties transferred as a result of [decedent's] * * * death. The valuations listed for the real property are tax valuations. The valuations for the Carpenter's, Inc. stock is book value as of the end of 1986. As you can see, there are some assets subject to intestate distribution because [decedent's] * * * Will contained no residuary clause. Of course, expenses and taxes will have to be paid out of these assets before anything is realized by the intestate beneficiaries. Although Mrs. Reid and Mrs. Carpenter will necessarily have to agree upon any percentage split of the property [decedent] * * * left to the trust, I have taken the liberty to describe *118 the IRS method of valuing the various trust interests. As you know, Mrs. Carpenter is 63. Enclosed are the Internal Revenue Service tables showing the percentage value of a life estate for a person age 63. As you can see, the value is slightly over 70%. It is clear, however, from the terms of the Will itself, that Mrs. Carpenter would have much more than a life estate (income) interest in the trust assets. She may draw freely from the principal of the trust with no limitations as to her actual needs for such funds. A life estate interest, of course, only has a right to trust income. Conceivably, Mrs. Carpenter could use the entire principal of the trust for her personal uses. Therefore, it would appear that the percentage of the trust assets which should go to Mrs. Carpenter outright would be somewhere between 70% and 100% of the total trust assets in order to correspond to her interest in the trust set up by Mr. Carpenter. If the trust is left in place, Mrs. Carpenter will be able to draw freely upon all the assets in the trust for her needs without limitation. She will not, however, be able to give or devise any of that property to anyone else. Mrs. Reid will be entitled *119 to whatever remains of the trust at Mrs. Carpenter's death, subject to her right to withdraw. The amount that Mrs. Reid would eventually receive would, of course, depend entirely on how much longer Mrs. Carpenter lives and how much she elects to spend. Also, if the trust is set up, I understand that there will be the normal administrative costs, plus extra hourly charges that will be necessary because so much of the trust property is real estate. If the trust is not set up and the assets are distributed outright, Mrs. Carpenter will take only a portion of the trust assets rather than have access to all of the trust assets for the rest of her life. Mrs. Reid would receive a portion of the trust assets outright now. The amount of this portion may be less or more than what Mrs. Reid would eventually receive upon Mrs. Carpenter's death. Some costs, of course, would be necessary to settle the matter in this manner, but a much larger amount of ongoing administrative costs for the trust would be saved. Please give this some thought and give me a call with your reactions or comments. Also, if you need any further information I might have, please do not hesitate to call.
Mrs. Carpenter *120 and Mrs. Reid subsequently entered into a Family Settlement Agreement under which they agreed that the property that would otherwise have been placed in trust be divided equally and transferred to them outright. They further agreed that the property as to which decedent had died intestate also be divided equally between them. The Family Settlement Agreement, in pertinent part, stated and provided as follows: AND WHEREAS, said holographic will is vague and indefinite and a Declaratory Judgment action would be necessary to interpret said will in order to clarify the status of legal title to much of the property of said estate at great expense to the estate, and a genuine dispute has arisen between the Wife and Daughter as to the true intent of [decedent] * * * with respect to the selection of a trustee or trustees as set forth in Item 3 of said Last Will and Testament and with respect to the property to be left in trust, to wit: whether the Wife may sell the property comprising the corpus of the proposed trust for her support without reference to a standard of support, or whether said property may be sold for payment of the Wife's necessities of life only; AND WHEREAS, [decedent] *121 * * * died intestate as to some property and it is the desire, wish and intention of both the Wife and the Daughter that the property over which no testamentary disposition was made, as well as the property to be placed in trust for the benefit of the Wife and Daughter, designated in Item 3 of the Last Will and Testament as amended by the Codicil, be divided and distributed equally to the Wife and the Daughter with legal title and ownership of same to vest in said Wife and Daughter as tenants in common and that the same be free of the purported trust set forth in Item 3 of said Last Will and Testament; * * * NOW, THEREFORE, the Wife and Daughter do hereby, in consideration of the covenants contained herein, contract and agree with each other as follows: * * * 5. All the rest, residue and remainder of the property of [decedent] * * *, whether real, personal, mixed, tangible or intangible, and whether known or unknown, including all after acquired property and property devised or bequeathed in Item 3 of said Last Will and Testament as amended by the Codicil, and all property of which [decedent] died intestate, shall be divided and distributed equally between said Wife and Daughter, *122 and the Wife and Daughter shall jointly hold legal title to said property as tenants in common, free of any purported trust mentioned in Item 3 of said Last Will and Testament * * *
By order dated May 24, 1988, the North Carolina Probate Court approved the above Family Settlement Agreement. Its order stated as follows: THIS CAUSE coming on to be heard before the undersigned (Assistant/Deputy) Clerk of the Superior Court of Durham County, North Carolina, in the exercise of the judicial power conferred upon him as ex officio judge of probate * * *, does hereby find that the above Family Settlement Agreement has been executed by Ernestine L. Carpenter, surviving spouse of [decedent] * * *, and Nancy Carpenter Reid, the only surviving lineal descendant of [decedent] * * *, who are the only persons having an interest in said estate, both of whom are sui juris, said Family Settlement Agreement being free of any impairment of the rights of creditors of said estate, and there being no fraud or imposition in the procurement thereof. NOW, THEREFORE, IT IS HEREBY ADJUDGED that said Family Settlement Agreement is in the best interest of said estate and the persons having an interest *123 therein, and said Family Settlement Agreement is hereby approved.
On its estate tax return, petitioner claimed a $ 464,795 marital deduction with respect to one-half of the total value of the assets split between Mrs. Carpenter and Mrs. Reid pursuant to the Family Settlement Agreement. In the notice of deficiency, respondent disallowed a $ 426,550 portion of such claimed marital deduction. OPINION Section 2056(a) allows a marital deduction from a decedent's gross estate for the value of property interests passing from the decedent to the surviving spouse. However, a marital deduction is generally denied for a terminable interest, such as an interest in the nature of a life estate left to a surviving spouse. Sec. 2056(b)(1); sec. 20.2056(b)-1(b), Estate Tax Regs. An exception is provided where the interest passing from the decedent to the surviving spouse is a right to income for life with a general power of appointment, meeting certain specified requirements. Sec. 2056(b)(5); sec. 20.2056(b)-1(d)(2), Estate Tax Regs. Section 20.2056(b)-5, Estate Tax Regs., in pertinent part, provides as follows (a) In general. Section 2056(b)(5) provides that if an interest in property *124 passes from decedent to his surviving spouse (whether or not in trust) and the spouse is entitled for life to all the income from the entire interest or all the income from a specific portion of the entire interest, with a power in her to appoint the entire interest or the specific portion, the interest which passes to her is a deductible interest, to the extent that it satisfies all five of the conditions set forth below * * *: (1) The surviving spouse must be entitled for life to all of the income from the entire interest or a specific portion of the entire interest, or to a specific portion of all the income from the entire interest. (2) The income payable to the surviving spouse must be payable annually or at more frequent intervals. (3) The surviving spouse must have the power to appoint the entire interest or the specific portion to either herself or her estate. (4) The power in the surviving spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events. (5) The entire interest or the specific portion must not be subject to a power in any person to appoint any part to any person other than the surviving spouse. *125 * * * (e) Application of local law. In determining whether or not the conditions set forth in paragraph (a)(1) through (5) of this section are satisfied by the instrument of transfer, regard is to be had to the applicable provisions of the law of the jurisdiction under which the interest passes and, if the transfer is in trust, the applicable provisions of the law governing the administration of the trust. * * *
As indicated above, in order to be deducted under section 2056, the interest in question must also have "passed" from the decedent. Where, as in the instant case, a surviving spouse receives property pursuant to an agreement concluded between her and the estate or other persons having an interest in the estate, the critical elements are the source and nature of the surviving spouse's rights to receive the property interest transferred to her. See Estate of Nachimson v. Commissioner, 50 T.C. 452, 454-456 (1968) (no marital deduction allowed for lump sum paid to surviving spouse under agreement estate concluded with her; State law allowed surviving spouse as a dower interest only life estate in one-half of her husband's real estate). *126 The legislative history of section 2056 states that "any interest received by the surviving spouse under a settlement which does not reflect her rights under the local law does not pass to the surviving spouse from the decedent." S. Rept. 1013 (Part 2), 80th Cong., 2d Sess., at 5 (1948). Accordingly, section 20.2056(b)-1(e)(3), Estate Tax Regs, in pertinent part, provides as follows: (e) Miscellaneous principles. * * * (3) Whether or not an interest is nondeductible because it is a terminable interest is to be determined by reference to the property interests which actually passed from the decedent. Subsequent conversions of the property are immaterial for this purpose. Thus, where a decedent bequeathed his estate to his wife for life with remainder to his children, the interest which passed to his wife is a nondeductible interest, even though the wife agrees with the children to take a fractional share of the estate in fee in lieu of the life interest in the whole * * *
In defining whether an interest has "passed from the decedent to his surviving spouse" in the context of a will contest, section 20.2056(e)-2(d)(2), Estate Tax Regs., provides as follows: If as a *127 result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interests depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.
In Estate of Hubert v. Commissioner, 101 T.C. 314, 319 (1993), we observed that even where a settlement agreement represents a good faith *128 compromise of a bona fide dispute, such agreement is not binding for Federal estate tax purposes on the question of whether the surviving spouse had enforceable rights in the decedent's estate, and stated as follows: In deciding whether a settlement agreement is a "bona fide recognition of enforceable rights of the surviving spouse in decedent's estate", this Court has looked to whether the agreement was made in good faith as the result of arm's-length negotiations. Estate of Barrett v. Commissioner, 22 T.C. 606, 611 (1954). However, in Commissioner v. Estate of Bosch, 387 U.S. 456 (1967), the Supreme Court held that a Federal court deciding the estate tax consequences of an attempted disclaimer was not bound by the State trial court's adjudication of the property rights involved. Citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), the Court noted that "state law as announced by the by the highest court of the State is to be followed." Commissioner v. Estate of Bosch, supra at 465. Moreover, the Court explained that the State's intermediate appellate court *129 decisions should be considered in deciding State law unless the Federal Court is convinced that the highest court of the State would rule otherwise. Therefore, the Court concluded that a Federal court may not always be bound by the decision of the intermediate appellate court and that "when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should a fortiori not be controlling." Id. Finally, the Court explained: the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. [Id.; emphasis added; citation omitted.] In light of the Supreme Court's decision in Estate of Bosch, courts have concluded that if the decision of a State trial court on a matter of State law is not binding for estate tax purposes, a good faith settlement of such an issue cannot be either. *130 Ahmanson Found. v. United States, 674 F.2d 761, 774 (9th Cir. 1981). We agree. In deciding whether the surviving spouse has enforceable rights in decedent's estate, courts must look behind any settlement agreement to ensure that the claim on which it is based is valid. Estate of Brandon v. Commissioner, 828 F.2d 493, 499 (8th Cir. 1987), revg. and remanding 86 T.C. 327 (1986).
Petitioner contends that the family settlement agreement concluded between decedent's wife and daughter was in bona fide recognition of enforceable rights of the wife under North Carolina law to a nonterminable interest in the trust assets. Petitioner argues that under North Carolina law, the wife had enforceable rights to a nonterminable interest in the assets because decedent's will gave her either: (1) A fee simple interest or (2) a life interest with a power of appointment within the meaning of section 2056(b)(5). Petitioner, however, acknowledges that the wife did not have a very strong claim to a fee interest in the assets. Alternatively, petitioner contends that even if decedent's will did not provide the *131 wife with a nonterminable interest, a marital deduction should still be allowed for the property the wife received under the settlement agreement because such agreement was made in good faith and was the result of arm's-length negotiations. Respondent, on the other hand, disputes that the wife had enforceable rights under the will and the applicable North Carolina law to a nonterminable interest in the trust assets. Respondent maintains that no marital deduction is allowable to petitioner under section 20.2056(b)-1(e)(3), Estate Tax Regs. We agree with respondent. The issue presented involves the wife's rights in the trust assets under North Carolina law. We previously refused to receive in evidence expert witness testimony offered by petitioner regarding how decedent's will would be construed under North Carolina law. We held such expert testimony inadmissible because it would invade the Court's province in determining the applicable North Carolina law. Such testimony concerning North Carolina law would not assist us as trier-of-fact in understanding the evidence or in determining a fact in issue, within the meaning of rule 702 of the Federal Rules of Evidence. See Estate of Carpenter v. Commissioner, T.C. Memo. 1993-97. *132 In North Carolina, several basic rules are applicable in the interpretation of a will. The most fundamental rule, however, is that "the intent of the testator is the polar star that must guide the courts in the interpretation of a will." Wing v. Wachovia Bank & Trust Co., N.A., 301 N.C. 456, 272 S.E.2d 90, 95 (1980). A second cardinal rule is to give effect to the general intent of the testator as that intent appears from a consideration of the entire instrument. Wilson v. First Presbyterian Church, 284 N.C. 284, 200 S.E.2d 769, 777 (1973). A third rule is that the intent of the testator must be ascertained from a consideration of the will as a whole and not merely from consideration of specific items or phrases of the will taken in isolation. Clark v. Connor, 253 N.C. 515, 117 S.E.2d 465, 468 (1960). See generally Adcock v. Perry, 305 N.C. 625, 290 S.E.2d 608, 611 (1982). N.C. Gen. Stat. section 31-38 (1984) establishes a presumption that a devise will be construed to be in fee simple absolute, *133 unless the will plainly intended to convey an estate of lesser dignity. In Adcock v. Perry, 290 S.E.2d at 611-612, however, the North Carolina Supreme Court held that where the testator's clear intent from the will is to convey his spouse a life estate, such statutory presumption was fully rebutted. The fact that the will also gave the spouse a limited power to dispose of the property to meet her personal needs did not convert the devise in question into a fee simple interest. Similarly, in Howell v. Alexander, 3 N.C. App. 371, 165 S.E.2d 256, 261 (1969), the North Carolina Appellate Court noted that "'The rule followed generally now in almost all jurisdictions is that a life estate expressly created by the language of an instrument will not be converted into a fee, or into any other form of estate greater than a life estate, merely by reason of their [sic] being coupled with it a power of disposition, however general or extensive.'" See also Keener v. Korn, 46 N.C. App. 214, 264 S.E.2d 829, 832 (1980) (quoting 28 Am.Jur.2d, Estates, sec. 81, *134 at 182). In the instant case, decedent's wife had no enforceable rights under North Carolina law to a fee simple interest in the trust assets. Decedent's will established a trust in which the wife was given a life interest. Upon her death, the trust would terminate and the assets would be distributed to decedent's daughter. Although the wife and the trustee were also given broad power to invade the trust's corpus to meet the wife's needs and provide for her general welfare, under North Carolina law, the wife's interest was not a fee simple interest. See Adcock v. Perry, supra; Howell v. Alexander, supra.
We now examine petitioner's contention that the wife had enforceable rights under North Carolina law to a nonterminable interest; i.e., a life estate with a power of appointment over the trust assets within the meaning of section 2056(b)(5). In Campbell v. Jordan, 274 N.C. 233, 162 S.E.2d 545 (1968), the North Carolina Supreme Court dealt with a trust where the trustees were expressly empowered to convey a portion of the trust assets *135 to certain life beneficiaries in fee simple, free of the trust, if such trustees deemed it "'necessary or best for the welfare of the [beneficiaries] * * * and consistent with the welfare of the testator's family and estate'" (quoting Woodard v. Mordecai, 234 N.C. 463, 67 S.E.2d 639, 646 (1951)). One of the life beneficiaries brought an action for interpretation of the trust and alleged the trustees had a mandatory duty to terminate the trust and convey the trust assets to her in fee simple. The North Carolina Supreme Court rejected such contention that the trustees had unfettered discretion to convey any part of the trust assets to the life beneficiary without any showing that it was necessary or best for the life beneficiary's welfare, and stated as follows: The final question presented is whether the trustee may, without any showing by * * * [the life beneficiary] that "it is necessary or best" for her welfare and consistent with the welfare of the trust estate and testator's family, convey to her any part of the trust estate? In other words, may he make an arbitrary decision upon any ground which appeals to him, or must * * * *136 [the life beneficiary] show substantial economic need or circumstances indicating that her best interest require a conveyance before the trustee can invade the corpus on her behalf? We think it abundantly clear that testator did not intend to give his trustee the unbridled discretion to divide his estate in contravention of his testamentary plan or to invade the corpus in behalf of any beneficiary except in case of necessity or circumstances clearly denoting that such invasion was best for the beneficiary's personal welfare. The beneficiary's necessity or personal welfare does not include the personal satisfaction she might derive from owning the property in fee and being able to devise it to persons of her choice. [Campbell v. Jordan, 162 S.E.2d at 551.]
In Campbell v. Jordan, supra at 551-552, the North Carolina Supreme Court further noted and quoted with approval the following language from two cases decided by courts in other states: In In re Murray, 142 Me. 24, 45 A.2d 636, the court construed a will which authorized trustees *137 to pay from the principal of the estate "such sums as in their absolute discretion may be needed for the comfortable support and maintenance" of testator's widow. In surcharging the trustees, who had advanced sums of money to the widow upon her request when she had money on deposit in the bank, the court said: "The term 'discretion' has been defined as deliberate judgment, -- the discernment of what is right and proper. It implies soundness of judgment -- judgment directed by circumspection. "* * * "'If a trust is created for beneficiaries in succession, the Trustee is under a duty to the successive beneficiaries to act with due regard to their respective interests.' Restatement of Law of Trusts, section 232, and note b thereunder; also section 183." Id. at 30-31, 45 A.2d at 638-639. In Kemp v. Paterson, 4 A.D.2d 153, 163 N.Y.S.2d 245, affirmed, 6 N.Y.2d 40, 188 N.Y.S.2d 161, 159 N.E.2d 661, the trust agreement authorized the trustee to pay to B all the net income annually during the rest of her life and so much of the principal sums *138 of this trust from time to time as the trustees may deem for the best interest of said B. Pursuant to this provision the trustees decided to distribute all of the principal of the trust to B. The remaindermen objected, and the court declined to permit the termination of the trust. The court said, "While undoubtedly, in a sense (the termination of the trust), these purposes will serve the beneficiary's 'best interest', the latter words must be interpreted not in the broadest meaning but in a manner which is consistent with the trust deed. Her 'best interest' must be judged within the framework of the status bestowed upon her by the settlor, the status of a life beneficiary, not of a recipient of the entire trust res. "In creating a trust, the settlor was not merely designating trustees as conduits through whom a gift could be made to the daughter whenever it would be to her advantage. The trust represented a plan of the settlor that included not only the beneficiary (B), but also remaindermen. In adding a flexible provision for the invasion of principal for the 'best interest' of the beneficiary, the settlor was not injecting a facile means for destroying the trust." Id. at 156, 163 N.Y.S.2d at 248. *139 In Howell v. Alexander, 3 N.C. App. 371, 165 S.E.2d 256 (1969), which was noted above, a husband left his wife a life interest in all assets of his estate with the power to sell and convey any part of the property, and to use, invest and reinvest the proceeds as she deemed advisable, without having to account to any court or person for any part of the property or any proceeds of sale thereof. On appeal, the North Carolina Appellate Court rejected the trial court's construction that the will gave the wife an unrestricted power of appointment under which she could appoint the property to herself in fee simple adversely to the interests of the remainderman, and stated as follows: By * * * his will, * * * [the testator] intended that his widow, * * * should have a life estate in all of his property, and that the remainder after the life estate should go to his daughter * * *. During the pendency of the life estate testator intended that his widow should not suffer or be in need so long as any of his property remained. Therefore, he gave his widow, as life tenant, plenary authority to absolutely dispose of his property for her best *140 interests, comfort, luxury, and support during her lifetime. She was authorized to exchange, invest and reinvest for the obvious purpose of maintaining income producing property in the estate, and for the obvious purpose of making any other advantageous sale or exchange. All of this the life tenant could do in her discretion, but it was testator's intention that these powers be exercised for her personal benefit during her lifetime. He did not intend that these powers might be exercised by the life tenant to convert his devise and bequest to her into a fee simple title whereby the property would be disposed of at her death as her estate, either by will or intestacy; otherwise his disposition of the remainder interest would be wholly frustrated. * * * A life tenant with such broad discretionary powers of disposition as are contained in this will administers the life estate property in the nature of a trustee for the benefit of herself and the remainderman. And, although she may have the unbridled discretion to subject the entire estate to her own use during her lifetime, even to the extent of a complete dissipation of the estate, she cannot take title in herself to the exclusion *141 of the interest of the remainderman. [Id. at 261-262.]
Hill v. Hill, 19 N.C. App. 42, 197 S.E.2d 886 (1973), on which petitioner relies on, is distinguishable and not inconsistent with Howell v. Alexander, supra. In Hill, the will gave the wife a life estate with a power "in her sole discretion to sell and dispose of any of this property whenever it shall appear necessary or desirable to provide her with additional funds for her care, comfort, happiness, maintenance or support." Id. at 887. The wife subsequently exercised this power to convey by selling certain real property to one of her children. One of the remaindermen challenged her sale of the property, alleging that the wife during her life tenancy was never in need of funds which would justify her sale of the property. The North Carolina Appellate Court in Hill, affirmed the trial court's decision not to set aside the transfer of the property. It stated that, pursuant to the will, whether the conveyance involved was necessary for her comfort and support was entirely within the wife's discretion. However, *142 the instant case is distinguishable from Hill v. Hill, supra, and Howell v. Alexander, supra. Here, decedent's will provided the property was to be held in trust and sold only with the consent of the trustee. The wife did not have enforceable rights under North Carolina law to a life estate with a power of appointment within the meaning of section 2056(b)(5). Although she and the trustee may have had broad power to invade the trust's corpus for her needs and for her general welfare, the will did not, expressly or impliedly, give the wife, alone and in all events, the power to appoint the trust assets, or any portion thereof, to herself free of the trust, or to her estate. Estate of Field v. Commissioner, 40 T.C. 802, 808-809 (1963); Estate of Draper v. Commissioner, T.C. Memo. 1988-201; see also Burnett v. United States, 314 F.Supp. 492, 496-499 (D.S.C. 1970), affd. per curiam 436 F.2d 975 (4th Cir. 1971). In conclusion, we find that the wife did not have enforceable *143 rights under North Carolina law to a nonterminable interest in the trust assets. Her interest under the will was a terminable interest. The will provided her with neither a fee simple interest nor a life estate with a power of appointment within the meaning of section 2056(b)(5). No marital deduction is allowable to petitioner under section 20.2056(b)-1(e)(3), Estate Tax Regs., notwithstanding the outright transfer to the wife of a portion of the trust assets pursuant to the family settlement agreement. The settlement agreement did not reflect the wife's rights under local law to a nonterminable interest in the trust assets. In other words, the source and nature of her rights to receive the property transferred outright to her derived from the subsequent agreement she concluded with the daughter, as opposed to her enforceable rights to a nonterminable interest under decedent's will and the applicable North Carolina law. See Estate of Nachimson v. Commissioner, 50 T.C. 452, 454-456 (1968); S. Rept. 1013 (Part 2), 80th Cong., 2d Sess. 5 (1948); cf. First National Exchange Bank v. United States, 335 F.2d 91 (4th Cir. 1964). *144 We further reject petitioner's contention that a marital deduction should nevertheless be allowed because the settlement agreement was made in good faith and was the result of arm's-length negotiations. In order for a marital deduction to be allowed, the property must "pass" from the decedent. Petitioner's reliance on the will contest provisions of section 20.2056(e)-2(d)(2), Estate Tax Regs., is misplaced because decedent's wife lacked enforceable rights to a nonterminable interest in the trust assets under North Carolina law. The mere fact that a good faith settlement agreement was reached is not sufficient. Estate of Brandon v. Commissioner, 828 F.2d 493, 499 (8th Cir. 1987), revg. and remanding 86 T.C. 327 (1986); Ahmanson Foundation v. United States, 674 F.2d 761, 774 (9th Cir. 1981); Estate of Hubert v. Commissioner, 101 T.C. 314, 319 (1993). To reflect the foregoing and certain adjustments agreed to by the parties,